[No. 42407. En Banc. May 17, 1973.]

THE STATE OF WASHINGTON, *Appellant,* v. RALPH WILLIAMS' NORTH WEST CHRYSLER PLYMOUTH, INC., *et al., Respondents.*

266

*Slade Gorton, Attorney General, John C. Martin, Deputy, Barbara Rothstein* and *James M. Kennedy, Assistants,* for appellant.

*Jennings P. Felix & Associates,* by *Jennings P. Felix,* for respondents.

ˈUTTER, J.—The State of Washington appeals from a judgment of dismissal entered by the trial court prior to the taking of any testimony. This judgment dismissed actions brought by the state under the Consumer Protection Act (RCW 19.86), the retail installment sales act (RCW 63.14), and the unfair motor vehicle business practices act (RCW 46.70).

The Attorney General, in the name of the State of Washington, commenced suit against Ralph Williams' North West Chrysler Plymouth, Inc. (North West), a Washington corporation; Ralph Williams, Inc. (RWI), a California corporation; Ralph Williams, individually and as corporate president of North West and RWI, a California resident; and Robert Friedman, individually and as corporate vice-president and general manager of North West, a former resident of King County, Washington. The state sought an adjudication that certain acts of the defendants violated the

previously mentioned laws, an order restraining defendants from engaging in the practices complained of, civil penalties, and restitution for many Washington residents harmed by the defendants' practices.

The trial court concluded (1) that the state's action was moot because North West was "an inactive, defunct, corporate shell"; (2) that an injunction may not lie because the defendants were unlikely to return to business in this state; (3) that the civil penalty claim fails because civil penalties are dependent upon the entry of an injunction and no injunction may lie; (4) that the restitution remedy for aggrieved citizens is unconstitutional; and (5) that the defendants are to be awarded attorney's fees because they are "prevailing parties".

We reverse the trial court on all grounds and remand the case for trial.

The state's complaint alleges many unfair and deceptive practices, of which the following is a summary.

It was alleged the defendants' customary prices were not lower than those of competing dealers, contrary to their advertising, nor were they "low or discount prices". In fact, specific prices advertised were not representative or illustrative of defendants' usual range of prices. Particular cars with undisclosed or patent defects were offered at attractive prices for the purpose of attracting customers and then switching interested persons to other cars. Cars were often not bona fide offers of sale due to their defects. Some cars which were advertised for sale had in fact already been sold, and the prices of identical or similar remaining cars were greatly in excess of those which had been advertised.

The defendants misrepresented the price at which they would sell vehicles through various deceptive advertising and sale practices. Sticker prices did not include new car preparation and delivery charges. Trade-in allowances were lower than were represented. Salesmen refused to give the total price of the car and referred only to monthly payments. Out-of-date blue books were used to inflate values to the dealer. Payments which were represented to be

acceptable, were less than those later contractually demanded.

Cars were offered on terms represented as more favorable than those available at other dealers when, in fact, such terms could not be and were not obtained. When negotiating a car purchase with a customer, defendants would obtain the customer's car, cash, check, or power of attorney and refuse to return such items in the event the customer decided not to purchase the car.

A sales system was designed to purposely confuse, mislead and deceive the customer by various means, including the making of specific false and deceptive promises which could not be and were not fulfilled. Customers were induced unnecessarily to purchase buyer's life and disability insurance with defendant as a beneficiary. Finance charges were not disclosed. The total prices charged for cars and services were unconscionable and illegal. When the defendants sold repossessed cars, they failed to account to the buyers if the sale price was in excess of the amount due.

The trial court reached its conclusion on a motion, prior to taking testimony in the case, and this appeal will be treated in the same manner as an appeal from an order granting summary judgment. *Burndy Corp. v. Cahill,* 301 F.2d 448 (8th Cir. 1962); *Highland Supply Corp. v. Reynolds Metals Co.,* 327 F.2d 725, 729-30 (8th Cir. 1964); *Preston v. Duncan,* 55 Wn.2d 678, 349 P.2d 605 (1960); *Hudesman v. Foley,* 73 Wn.2d 880, 441 P.2d 532 (1968). *See* Trautman, *Motions for Summary Judgment,* 45 Wash. L. Rev. 1, 23-24 (1970). A complaint should only be dismissed if it appears beyond doubt that the state cannot prove any set of facts in support of their claim. The state should not be deprived of trial on disputed issues of fact or disputed inferences from agreed facts. *Fleming v. Stoddard Wendle Motor Co.,* 70 Wn.2d 465, 423 P.2d 926 (1967); *Meadows v. Grant's Auto Brokers, Inc.,* 71 Wn.2d 874, 431 P.2d 216 (1967).

The uncontested facts in this case are that North West ceased selling cars in the state on December 30, 1970 when

it was closed by the State Department of Revenue for failing to pay excise taxes, collected by it from its customers, which were due and owing the state. The trial court concluded there was no question of fact or even a "substantial claim of likelihood that North West would engage in business in the State of Washington thereafter and therefore decided the entire case was moot" as to all defendants. The affidavits, exhibits and other material submitted in this case establish that North West, after December 30, 1970, retained many characteristics of a viable, active corporation and that all other defendants are in existence.

As of September 15, 1971, North West had paid corporate license fees through July 1, 1972. Although North West appeared to be without assets, affidavits on file raised an issue of fact as to whether money was sent, by transferring funds, to out-of-state corporations owned by Ralph Williams. An issue of fact was also raised as to whether North West knowingly arranged its affairs to cause a default in state taxes and the resulting State Department of Revenue closure.

North West is a plaintiff in a federal antitrust action and has taken steps to settle lawsuits in which it is a defendant. Although North West executed an assignment of stock to Chrysler Credit Corporation to secure a loan, an issue of fact is raised by affidavits as to whether the certificates had in fact been transferred or foreclosed upon and whether Chrysler Credit Corporation could in any event vote or control the shares.

On May 27, 1971, Ralph Williams, as president of North West, entered a consent order with the Federal Trade Commission concerning certain advertising practices and on January 5, 1971, involved North West as a plaintiff in a lawsuit, alleging it to be a Washington corporation. Depositions were taken in the latter case as late as January 13, 1972.

On September 28, 1971, a prospectus was issued for RWI which states that Ralph Williams, personally, and RWI would be founders of a new nationwide corporation inter-

ested in acquiring businesses throughout the country, primarily relating to automobile leasing or car rentals but not necessarily limited thereto. The prospectus indicates that "Mr. Willliams name in the recent past has also been associated with automobile dealerships controlled by him in . . . Seattle, Washington . . ." On December 29, 1971, Ralph Williams filed a suit asking for $350,000 damages for allegedly libelous statements harming him in the state of Washington. Testimony indicates that in spite of extensive litigation with Chrysler Credit Corporation, Ralph Williams owns a corporation holding a franchise with Chrysler-Plymouth and also owns a Ford franchise. RWI has filed suit in the state of Washington against Chrysler Credit Corporation as assignee of North West claims.

In view of these factual questions, we cannot agree that the pleadings, affidavits and other materials in the file establish as a matter of law that North West was an "inactive, defunct corporation" and that the actions against it and all other defendants were moot.

■ To determine whether an injunction may lie against defendants who are not acting in the manner complained of by the state at the time of trial, we first look to the Consumer Protection Act, RCW 19.86.920, which provides:

. in construing this act, the courts be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters . . .

Therefore, in deciding injunction issues under the Consumer Protection Act, we are statutorily instructed to look to appropriate federal authority for guidance. Although we are not conclusively bound by the relevant federal cases, we find their reasoning persuasive.

■ The state contends the defendants did not *voluntarily* cease the complained of practices, but that they denied their illegality and continued the practices. Under such circumstances, a dismissal of a claim for an injunction on the grounds of a discontinuance of illegal practices requires consideration of all facts and circumstances. Prime impor-

tance is to be given to the timing, volition and general attitude of the respondents in their cessation. *Oregon-Washington Plywood Co. v. Federal Trade Comm'n*, 194 F.2d 48 (9th Cir. 1952); *Benrus Watch Co. v. Federal Trade Comm'n*, 352 F.2d 313, 322 (8th Cir. 1965), *cert. denied*, 384 U.S. 939, 16 L. Ed. 2d 538, 86 S. Ct. 1457 (1966).

Mootness exists in the issuance of injunctions only where events make it absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur. Voluntary cessation of allegedly illegal conduct does not moot a case because there is still a likelihood of the illegal conduct recurring. *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 202-04, 21 L. Ed. 2d 344, 89 S. Ct. 361 (1968); *Securities & Exch. Comm'n v. Medical Comm. for Human Rights*, 404 U.S. 403, 406, 30 L. Ed. 2d 560, 92 S. Ct. 577 (1972); *Parsons Inv. Co. v. Chase Manhattan Bank*, 466 F.2d 869, 871 (6th Cir. 1972).

In *Phosphate Export Ass'n*, one issue was whether an injunction should issue where the association had dissolved itself because it was uneconomical to operate. The court held the case was not moot because the individual association members, who were also defendants, were subject to an injunction action regardless of the discontinuance of association operation.

A heavier burden is placed on parties alleging abandonment of practices where the practices are discontinued subsequent, rather than prior, to institution of suit. *United States v. Oregon State Medical Soc'y*, 343 U.S. 326, 96 L. Ed. 978, 72 S. Ct. 690 (1952); *United States v. Parke, Davis & Co.*, 362 U.S. 29, 4 L. Ed. 2d 505, 80 S. Ct. 503 (1960).

The facts we have heretofore recited, while admittedly only those which favored the state's contentions, nonetheless raise a preliminary issue of fact as to whether the allegedly wrongful behavior could reasonably be expected to recur on the part of North West. The same issue unquestionably exists as to the other three defendants, Ralph Williams, RWI, and Robert Friedman, inasmuch as they are free to continue business operations in the state of Wash-

ington and barring the issuance of an injunction, could not be prevented from reentering the state and resuming the identical practices.

When first enacted, the only sanctions in RCW 19.86.140 for violating RCW 19.86.020, dealing with unfair competition and practices, were those of an injunction and civil penalty for violation of the terms of the injunction. *See* O'Connell, *Washington Consumer Protection Act—Enforcement Provisions and Policies,* 36 Wash. L. Rev. 279 (1961). Where injunctions are the only remedies in consumer protection acts, firms can operate in a county or state and then remove themselves from the jurisdiction after being formally enjoined, all without suffering any penalty. The addition of fines to the list of sanctions in consumer protection acts has the effect of deterring and penalizing this type of violator.

 In an apparent attempt to alleviate this problem, the 1970 legislature added a paragraph to RCW 19.86.140. This paragraph provides: "Every person who violates RCW 19.86.020 shall forfeit and pay a civil penalty of not more than two thousand dollars for each violation . . ." After considering the amendment's text and independent enactment, we believe it is apparent it was not intended to be a remedy dependent upon the issuance of an injunction.[1]

The trial court's interpretation, permitting penalty recoveries only if an injunction actually issues, destroys the

---

[1]Following is RCW 19.86.140 with paragraph numbering and dating:

Paragraph one (1961). "Every person who shall violate RCW 19.86.*030* or 19.86.*040* or the terms of any injunction issued as in this chapter provided, shall forfeit and pay a *civil penalty* of not more than twenty-five thousand dollars." (Italics ours.)

Paragraph two (1970). "Every person who violates RCW 19.86.*020* shall forfeit and pay a *civil penalty* of not more than two thousand dollars for each violation . . ." (Italics ours.)

Paragraph three (1961). "For the purpose of this section the superior court issuing any *injunction* shall retain jurisdiction, and the cause shall be continued, and in such cases the attorney general . . . may petition for the recovery of *civil penalties*." (Italics ours.)

Paragraph four (1961). "With respect to violations of RCW 19.86.*030* and 19.86.*040*, the attorney general . . . may seek recovery of such *penalties* in a civil action." (Italics ours.)

value of the 1970 amendment regarding RCW 19.86.020 violations. The trial court held as it did because it assumed incorrectly (1) that the third paragraph of RCW 19.86.140 is intended to allow the court to grant RCW 19.86.020 penalties only in the event an injunction issued, and (2) that the absence of a specific authorization to the Attorney General to seek separate penalties in either paragraphs three or four of RCW 19.86.140 denies that possibility.

These assumptions are in error for two reasons. First, the third paragraph refers to paragraph one, as they were both enacted in 1961, and does not refer to the 1970 amendment, which is now paragraph two. Understood in this way, paragraph three simply establishes procedural guidelines for the court in the enforcement of injunctions, and it does not deal at all with the substantive penalty provision for RCW 19.86.020 violations established in 1970 (paragraph two). Secondly, the existence of the fourth paragraph is itself unnecessary because the Attorney General is authorized to bring suits under the act and thus any authorization omission in it is immaterial. The trial court's interpretation would deny the Attorney General power to fulfill the legislative mandate of the act if no paragraph four existed, for it held all authorizations to the Attorney General under RCW 19.86.140 must be expressed in paragraph four. Such an interpretation makes meaningless the 1970 amendment.

Our interpretation preserving the legislative intent of authorizing suit for penalties alone and separate from injunctions for RCW 19.86.020 violations is in keeping with legislative direction that "in order to protect the public and foster fair and honest competition. . . . this act shall be liberally construed that its beneficial purposes may be served." RCW 19.86.920. In addition, the Attorney General is granted general powers to act on behalf of the state's interest, as in the enforcement of legislation. RCW 43.10.030. *State ex rel. Attorney General v. Seattle Gas & Elec. Co.*, 28 Wash. 488, 495-500, 68 P. 946, 70 P. 114 (1902); *State ex rel. Evans v. Brotherhood of Friends*, 41 Wn.2d 133, 141-42, 247 P.2d 787 (1952).

The suit also should not be dismissed because the state alleges certain practices are unlawful under the Consumer Protection Act, thereby requiring an adjudication of this claim and the entry of a decree should such violations be found. The decree is available to private parties in pressing private damage suits. RCW 19.86.130. The legitimate purposes the state seeks to effectuate by the adjudication claim are a finding of what practices are prohibited and a resulting decree for use in private litigation.

Federal cases construing similar provisions of the Clayton Act, as in 15 U.S.C. § 16(a), have stressed that the purpose of the statutes is largely to minimize the burden on private suitors and assist enforcement of the laws through private actions. *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 95 L. Ed. 534, 71 S. Ct. 408 (1951); *Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co.,* 381 U.S. 311, 14 L. Ed. 2d 405, 85 S. Ct. 1473 (1965); *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 336, 28 L. Ed. 2d 77, 91 S. Ct. 795 (1971). Our law is even stronger than the federal statute, providing that, when unfair trade practice violations (RCW 19.86.020) are reduced to a final judgment or decree, it shall be given prima facie effect in any action brought by private parties. RCW 19.86.130. A suit brought by the state for these purposes has a legitimate state interest separate and apart from the question of whether an injunction should lie. *United States v. Parke, Davis & Co.,* 365 U.S. 125, 5 L. Ed. 2d 457, 81 S. Ct. 433 (1961); *United States v. Uniroyal, Inc.,* 300 F. Supp. 84 (S.D.N.Y. 1969).

In addition to the alleged violations of the Consumer Protection Act, separate from the injunction issue, the court should have retained jurisdiction to consider whether there were also violation issues to be adjudicated concerning the retail installment sales act, RCW 63.14, and the unfair motor vehicle business practices act, RCW 46.70.

There can therefore be no contention that this case does not present a justiciable controversy. There is an actual controversy, the case is adversary in character, and

there are genuine rights and interests upon which the judgment will operate. The judgment would have a binding effect upon the controversy between the parties and the case is not brought upon a hypothetical state of facts. *State ex rel. O'Connell v. Dubuque*, 68 Wn.2d 553, 558-60, 413 P.2d 972 (1966); *Sorenson v. Bellingham*, 80 Wn.2d 547, 496 P.2d 512 (1972).

The state prayed for an additional remedy, restitution for persons allegedly suffering damages because of the defendants' practices, as provided for in RCW 19.86.080:

> The attorney general may bring an action in the name of the state against any person to restrain and prevent the doing of any act herein prohibited or declared to be unlawful . . .
>
> The court may make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any act herein prohibited or declared to be unlawful.

The trial court held the restitutionary powers provided in this act where in derogation of article 8, section 5 of the Washington State Constitution, which provides:

> The credit of the state shall not, in any manner be given or loaned to, or in aid of, any individual, association, company or corporation.

The court believed obtaining money or property restoration by the Attorney General for private parties who were complaining witnesses would be in effect having the Attorney General directly representing those persons, and that the cost of litigation would therefore be a gift of public funds to private individuals.

■ We cannot agree with this analysis, and affirm our recognition and support of the restitution remedy in *Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.*, 81 Wn.2d 740, 504 P.2d 1139 (1973). In *Seaboard*, at page 746, we found the restitution remedy for private individuals was "only incidental to and in aid of the relief *asked* on behalf of the public." (Italics ours.) This is

so, for it is the protection of the public from unlawful business practices which is the primary purpose of this action initiated by the State Attorney General. Aid to individuals is not absolutely prohibited under our law but is only improper where public money is used solely for private purposes. *Morgan v. Department of Social Security*, 14 Wn.2d 156, 127 P.2d 686 (1942); *State ex rel. Graham v. Olympia*, 80 Wn.2d 672, 687, 497 P.2d 924 (1972).

Suits for injunctive relief and restitution enforce the laws of the particular jurisdiction in the public interest by restoring the status quo. Restitution orders are appropriate and necessary as a part of equitable relief. *Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc., supra*. The recovery of that which has been illegally acquired and which has given rise to the necessity for the injunctive relief not only restores the property to the party but insures future compliance where it is assured a wrongdoer is compelled to restore illegal gains. *Porter v. Warner Holding Co.*, 328 U.S. 395, 90 L. Ed. 1332, 66 S. Ct. 1086 (1946); *United States v. Moore*, 340 U.S. 616, 95 L. Ed. 582, 71 S. Ct. 524 (1951); *J.I. Case Co. v. Borak*, 377 U.S 426, 434, 12 L. Ed. 2d 423, 84 S. Ct. 1555 (1964); *Woods v. Bomboy*, 179 F.2d 565 (3d Cir. 1950); *Securities & Exch. Comm'n v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1307 (2d Cir. 1971); *Rogers v. Loether*, 467 F.2d 1110, 1120 (7th Cir. 1972).

Even if injunctive relief, though requested, is not in fact granted, restitution is still an appropriate remedy. Once equity jurisdiction is properly invoked the court may retain the cause for the adjudication of the entire matter in controversy, especially where injunctive relief is frustrated by a change brought about by the behavior of the defendants subsequent to the filing of the suit. *United States v. Moore, supra*.

Although a restrictive interpretation of RCW 19.86.080 could be used to limit this authority, we are statutorily required to provide a liberal construction of the act's provision (RCW 19.86.920), and decline to limit the traditional

equity powers of the court. Moreover, equitable powers of remedy must be broad and flexible. *Hecht Co. v. Bowles,* 321 U.S. 321, 88 L. Ed. 754, 64 S. Ct. 587 (1944).

Our indication in *Seaboard,* 81 Wn.2d at 744, that restitution is only incidental to the *granting* of an injunction presumed the request for injunctive relief would not be avoided by the defendants' behavior prior to trial. However, when an injunction is initially properly requested and is avoided by the defendants' subsequent behavior, the court does not lose its full equity jurisdiction. RCW 19.86.080 only requires that the restitution remedy be requested in an injunction action, but the frustration of the latter by defendants shall not deny the granting of the former.

Respondents argue the Consumer Protection Act as it is now drafted is unconstitutional as being void for vagueness. The respondents' specific contention is that the terms of RCW 19.86.020 and .920 are vague and the act provides no clarifying standards. The terms deemed vague and standardless are "unfair methods of competition", "unfair or deceptive acts or practices", "reasonable in relation to the development and preservation of business", and "not injurious to the public interest".

▇ This argument is premised on the assertion that RCW 19.86 is a penal statute and thereby must be strictly construed. The existence of penalties in an act, however, does not make the act quasi-criminal in nature. The legislature has wide discretion in the choice of remedies to promote compliance with a law, and providing for fines in a civil proceeding does not convert the proceeding to a criminal or penal one. *Helvering v. Mitchell,* 303 U.S. 391, 82 L. Ed. 917, 58 S. Ct. 630 (1938); *Olshausen v. Commissioner,* 273 F.2d 23 (9th Cir. 1959), *cert. denied,* 363 U.S. 820, 4 L. Ed. 2d 1517, 80 S. Ct. 1256 (1960); *Kugler v. Romain,* 110 N.J. Super. 470, 266 A.2d 144, 153 (1970), *aff'd as modified,* 58 N.J. 522, 279 A.2d 640 (1971). Therefore, construction of RCW 19.86 is not governed by the strict rules pertaining to penal statutes.

■ The charge of vagueness is specifically answered by *State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 501 P.2d 290 (1972) where this court noted that although the due process clause of the Fourteenth Amendment requires that people be given notice of what is statutorily prohibited in the regulation of business activities, greater leeway is allowed in applying the vagueness test in this field. We there noted, at page 274, "The federal courts have amassed an abundance of law giving shape and definition to the words and phrases challenged . . . ." Now, more than 30 years after the Supreme Court said that the phrase "unfair methods of competition" does not admit to "precise definition", we can say that phrase, and the amended language, has the meaning well settled in federal trade regulation law. Thus, in interpreting the language of RCW 19.86.020 with the guidance of federal law (RCW 19.86.920), we hold that the phrases "unfair methods of competition" and "unfair or deceptive acts or practices" have a sufficiently well established meaning in common law and federal trade law to meet any constitutional challenge of vagueness.

Unlike First Amendment cases, the court is not concerned with the vagueness of the statute on its face but rather whether the statutory language, tested in light of the conduct with which the defendant is charged, is vague. *United States v. National Dairy Prods. Corp.,* 372 U.S. 29, 9 L. Ed. 2d 561, 83 S. Ct. 594 (1963).

■ Finally, the respondents assert the procedural differences between the Federal Trade Commission Act and the Washington Consumer Protection Act indicate a constitutional deficiency in the state act. We disagree. Under the Federal Trade Commission Act, penalties may only ensue upon cease and desist order violations, whereas our act's penalty attachment occurs if there is a judicial decree of unlawful practices. However, since the terms of the act are sufficiently precise to give notice of what is prohibited and since our procedures require a judicial finding before any penalties may attach, the differences in the federal and state processes are insignificant.

The trial court award of attorney's fees to the respondents as "prevailing parties" is set aside in light of our ruling in this case. The judgment of the trial court is reversed.

HALE, C.J., FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, and BRACHTENBACH, JJ., and RUMMEL, J. Pro Tem., concur.

Petition for rehearing denied July 30, 1973.