[No. 50756-2. En Banc. January 11, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. ANTHONY SCHWAB, ET AL, *Appellants.*

*Anthony Schwab,* pro se.

*Kenneth O. Eikenberry, Attorney General, John R. Ellis, Deputy,* and *Betsy R. Hollingsworth* and *Jon P. Ferguson, Assistants,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

At issue in this case is whether violations of the Residential Landlord–Tenant Act of 1973 come under the Consumer Protection Act.

This case of first impression was certified to this court by the State of Washington Court of Appeals, Division One, at the request of the Attorney General. In making such request the Attorney General's office represented that it was "important that the Attorney General establish whether Residential Landlord–Tenant Act violations indeed violate the Consumer Protection Act" and that "because of the significant impact that a ruling on any issue adverse to the state would have, it is probable that legislative changes would need to be sought."

The defendants in this case are Anthony Schwab and his wife. For convenience, we will refer to Mr. Schwab as though he were the sole defendant. He bought a number of submarginal Seattle residential housing units at tax and lien foreclosure sales and thereafter rented them, usually for less than $150 per month. This litigation primarily concerns four of those units.

The defendant's management philosophy, as found by the trial court, was this: "Defendant Schwab prepared rental agreements for his tenants to sign. These agreements generally provided that in exchange for low rent, the tenant was required to take the premises on an 'as is' basis and that defendant Schwab would not provide repairs or landlord services."[1] The defendant's business practices were somewhat informal, at best. For example, the rental agreements were handwritten, and the tenant in one of his units here involved paid no rent at all for the 3½ years of his tenancy prior to the trial.

Two of the tenants complained to the Consumer and Business Fair Practices Division of the State Attorney General's office. Following an investigation, that office filed a Complaint for Injunctive and Additional Relief under the Consumer Protection Act in the Superior Court of the State of Washington for King County.

Following a 4–day trial to the court, the court found as facts that the defendant had violated sections of the City of Seattle Housing Code, Seattle Municipal Code 22.200, and of the Residential Landlord–Tenant Act of 1973, RCW 59.18. At this point it should be observed parenthetically that the city housing code violations are, by reference in the landlord–tenant act, RCW 59.18.060(1), made violations of the landlord–tenant act and they are so considered herein. The trial court concluded that the defendant's acts were violations of the landlord–tenant act and of the Consumer Protection Act, RCW 19.86.020.

---

[1]Finding of fact 9.

Acting pursuant to provisions of the Consumer Protection Act, the trial court awarded restitution in the sum of $125 to a tenant found to have made a security deposit that had not been returned and awarded judgment to the State against the defendant for $8,800 in civil penalties and $25,000 in attorneys' fees. Thus, the total judgment against the defendant was $33,925 plus costs. The defendant was also enjoined from further similar acts. In argument before this court the defendant states that he has since sold the houses involved.

The defendant appeals; the State cross–appeals alleging that the trial court abused its discretion in not awarding an additional $20,158.05 in attorneys' fees.

One question is dispositive of the various issues raised by the appeal and cross appeal.

ISSUE

Are residential tenancies subject to the provisions of the Consumer Protection Act?

DECISION

CONCLUSION. Residential landlord–tenant problems are within the express purview of the Residential Landlord–Tenant Act of 1973, RCW 59.18, and we perceive the Legislature's intent to clearly be that violations of that act do not also constitute violations of the Consumer Protection Act, RCW 19.86. We reverse the trial court.

In the interest of readability, the citations in this opinion have been placed in the margin wherever feasible.

The Consumer Protection Act, RCW 19.86, declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce". RCW 19.86.020. The authority of the Attorney General to proceed under the act is found in the following section thereof:

The attorney general may bring an action in the name of the state against any person to restrain and prevent

the doing of any act herein prohibited or declared to be unlawful; and the prevailing party may, in the discretion of the court, recover the costs of said action including a reasonable attorney's fee.

The court may make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any act herein prohibited or declared to be unlawful.

RCW 19.86.080.

As this court held in the leading 1972 Consumer Protection Act case of *State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 275, 501 P.2d 290 (1972), *appeal dismissed,* 411 U.S. 945, 36 L. Ed. 2d 406, 93 S. Ct. 1927 (1973):

In the final analysis, the interpretation of RCW 19.86.020 is left to the state courts. This enables us to arrive at the statute's meaning by the same "gradual process of judicial inclusion and exclusion" used by the federal courts. . . . But in each case the question of what constitutes an "unfair method of competition" or an "unfair or deceptive act or practice" under RCW 19.86.020 is for us, rather than the federal courts, to determine.

In the more than a decade since that decision, this court and the other courts of this state have been engaged in that "gradual process of judicial inclusion and exclusion". Since prevailing claimants in Consumer Protection Act cases are entitled to recover, in addition to actual damages, reasonable attorneys' fees and in some cases treble damages,[2] there has been no dearth of litigation under the act.

The Legislature, which adopted the Consumer Protection Act in the first instance, has further facilitated this inclusion and exclusion process. It has done so by responding from time to time to problems in the marketplace by including certain designated activities within the ambit of the act. The Legislature has, for example, specifically

---

[2]RCW 19.86.090; RCW 19.86.080.

placed within the scope of the Consumer Protection Act such widely diverse activities as charitable solicitations,[3] chain distributor schemes,[4] usurious contracts,[5] camping clubs,[6] unfair motor vehicle business practices,[7] discriminatory practices,[8] consumer leases,[9] time share activities,[10] land development,[11] debt adjusting,[12] hearing aid sales,[13] embalming and funeral directing businesses[14] and telephone equipment sales.[15]

As will be looked at shortly, the Legislature has also considered, but rejected, the inclusion of other activities within the act.

By inclusion of the foregoing activities within the act, not only is the Attorney General's office authorized to act in such matters, as it has in this case,[16] but private litigants are likewise empowered to utilize the remedies provided them by the act.[17]

There is a marked difference between the judicial and legislative processes of inclusion and exclusion of activities under the Consumer Protection Act. In the legislative process, the people engaged in the activity sought to be specifically included within the act have the full opportunity to be heard and to have their particular problems considered at legislative hearings. Furthermore, the merits of any such proposed inclusion are subject to debate and amendment in

---

[3]RCW 19.09.340.

[4]RCW 19.102.020.

[5]RCW 19.52.036.

[6]RCW 19.105.500.

[7]RCW 46.70.220.

[8]RCW 49.60.030(3).

[9]RCW 63.10.050.

[10]RCW 64.36.170.

[11]RCW 58.19.270.

[12]RCW 18.28.185.

[13]RCW 18.35.180.

[14]RCW 18.39.350.

[15]RCW 19.130.060.

[16]RCW 19.86.080.

[17]RCW 19.86.090.

legislative committees and on the floor of the respective houses of the Legislature.

The judicial process, on the other hand, does not always provide equivalent opportunities. In the present case, for example, the State Attorney General's office represents the interests of the public (and indirectly the rights of the individual tenants),[18] whereas the landlord appearing pro se represents himself in a case which potentially affects every person in the state who rents out or ever will rent out one or more dwelling units. Although the Legislature has mandated that the "act shall be liberally construed that its beneficial purposes may be served", RCW 19.86.920, that is not to say that the judiciary should not give the most careful consideration to the "process of judicial inclusion and exclusion" of activities under the act.

■ The Attorney General in this case, as suggested by some commentators in the past, urges this court to hold that the Consumer Protection Act, RCW 19.86, is available as a vehicle for enforcing tenants' rights as those rights are established by the Residential Landlord–Tenant Act of 1973, RCW 59.18.[19] One recurring argument, as expressed in the Attorney General's brief herein, is that "violations of statutes promulgated in the public interest constitute *per se* violations, thus creating in the state a power of enforcement in order that the beneficial purposes of the statutes are carried out."[20] Since all statutes are presumably promulgated by the Legislature in the public interest, this is tantamount to arguing that any violation of a statute is a per se violation of the public interest and that a Consumer

[18]*Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.,* 81 Wn.2d 740, 746, 504 P.2d 1139 (1973).

[19]Comment, *State v. Reader's Digest Association—A Knockout Punch to Unfair or Deceptive Acts or Practices in Washington?,* 10 Gonz. L. Rev. 529, 540 (1975); Comment, *Washington Tenant Remedies and the Consumer Protection Act,* 10 Gonz. L. Rev. 559 (1975); Clarke, *Washington's Implied Warranty of Habitability: Reform or Illusion?,* 14 Gonz. L. Rev. 1, 46 (1978).

[20]Opening Brief of Respondent, at 23.

Protection Act action can be brought thereon by either the Attorney General[21] or a private party.[22] This court rejected that precise argument in *Haner v. Quincy Farm Chems., Inc.*, 97 Wn.2d 753, 761–63, 649 P.2d 828 (1982). As succinctly put in *Sato v. Century 21 Ocean Shores Real Estate*, 101 Wn.2d 599, 601, 681 P.2d 242 (1984), "not every violation of a statute results in a per se consumer protection action."

It would serve no useful purpose to recite all of the Attorney General's arguments herein other than to note that in substantial part they track the above referenced law review commentators. With due consideration to those arguments, we nevertheless perceive the following three aspects of this matter to be determinative.

■ First, nothing in the legislative history of the enactment of the Consumer Protection Act suggests that it was ever intended by the Legislature to be applied to the rental of residential housing. The Consumer Protection Act had as its genesis a study conducted by the Washington State Consumer Advisory Council, a 33–person committee appointed by the Governor and chaired by the State Attorney General. We have found nothing in the history of that committee's work, which was completed in 1960,[23] or in the 1961 legislative deliberations on the bill which became the Consumer Protection Act,[24] which in any way suggests that the vast array of residential landlord–tenant problems were among the types of unfair, deceptive and fraudulent acts or practices that the Consumer Protection Act was intended

---

[21]RCW 19.86.080.

[22]RCW 19.86.090.

[23]*See* Washington Consumer Advisory Council, *Consumer Protection in the State of Washington* (1960); Thirty–Fifth Biennial Report of the Attorney General, at 25–37 (1959–1960).

[24]Laws of 1961, ch. 216, p. 1956. *See, e.g.,* Senate Journal, 37th Legislature (1961), at 285–86, 288–89, 1158–62; House Journal, 37th Legislature (1961), at 1185–92.

to address.

This is not to suggest that this historical perspective is determinative of the coverage of the Consumer Protection Act in this case; it is not. The unfair practices and competition language of RCW 19.86.020 was intentionally drawn with a broad brush to cover a broad range of human inventiveness.[25] The history of the act is, however, a relevant factor to be considered when confronted, as we are here, with an effort to include for the first time the residential landlord–tenant relationship within the 2½–decade–old Consumer Protection Act aimed at abuses in "trade" and "commerce".

Second, the respective rights and duties of residential tenants and landlords are spelled out in great detail, and an array of specific remedies provided for violations thereof, in a single comprehensive enactment, the Residential Landlord–Tenant Act of 1973, RCW 59.18. Nothing in that enactment purports to give the Attorney General any enforcement authority for violations of it.

Exhaustive efforts on the part of concerned parties and legislators went into the drafting and enactment of the Residential Landlord–Tenant Act of 1973. This work included the following: unsuccessful efforts in pre–1973 legislative sessions to pass such a bill; negotiations extending over a 9–month period by an ad hoc citizens' committee under the auspices of the Joint Interim Judiciary Committee; the introduction in the 1973 legislative session of bills in both the House and the Senate; numerous committee hearings on the bills in both houses; and the fashioning of a compromise bill by a joint House–Senate committee that worked on the bills. In addition, before the bill finally passed the Legislature at the 1973 legislative session, there was considerable floor debate in both houses, including 2 full days of debate on the Senate floor. The consideration of the bill included numerous floor amendments in both

---

[25]See O'Connell, *Washington Consumer Protection Act—Enforcement Provisions and Policies,* 36 Wash. L. Rev. 279, 280 (1961).

houses, the adoption of some 22 amendments in the House and the adoption of about half of the 110 floor amendments considered by the Senate.[26]

The Governor thereupon exercised his item veto on the bill 14 times. In due course, this court was heard from on the bill and in *Washington Ass'n of Apartment Ass'ns, Inc. v. Evans*, 88 Wn.2d 563, 564 P.2d 788 (1977), the item vetoes were declared invalid. The enactment thus became settled law in the form in which it passed the Legislature.

In sum, it is hard to perceive of a more thoroughly considered piece of legislation than the Residential Landlord–Tenant Act of 1973. The history of that enactment shows the care exercised by the Legislature in writing the act and in delineating the specific rights, duties, and remedies of both landlords and tenants. For this reason, along with the other reasons stated herein, we decline to now expand the coverage of that act by interpretation so as to include a Consumer Protection Act cause of action.[27]

At this point it is appropriate to observe parenthetically that the tenants who were renting premises on an "as is" basis here, in violation by the landlord of the Residential Landlord–Tenant Act of 1973,[28] had the right to themselves proceed directly against the landlord and recover their actual damages as well as reasonable attorneys' fees under the protective provisions of that act.[29]

Third, the 1973 Legislature first considered, then rejected, an amendment to the Residential Landlord–Tenant Act of 1973 which by its express terms would have provided that violations "of the provisions of this chapter shall be construed, for the purposes of application of the Consumer

---

[26]Clarke, *Washington's Implied Warranty of Habitability: Reform or Illusion?*, 14 Gonz. L. Rev. 1, 11–12 (1978).

[27]*See generally People for Envtl. Progress v. Leisz*, 373 F. Supp. 589 (C.D. Cal. 1974).

[28]RCW 59.18.230(2)(a).

[29]RCW 59.18.230(3).

Protection Act, chapter 19.86 RCW, to constitute an unfair or deceptive act or practice or an unfair method of competition in the conduct of trade or commerce."[30] This amendment was considered on the floor of the Senate. Before the amendment was voted down, one senator questioned whether the Attorney General's office had sufficient staff to handle such a job, and another senator questioned the wisdom of opening the door to treble damages under the Consumer Protection Act when a double damages amendment had just been voted down.[31] This demonstrates that the Senate was well aware of the effect of what it was doing when it turned down the amendment extending the Consumer Protection Act to violations of the Residential Landlord–Tenant Act of 1973; so too does the fact that this same Legislature enacted legislation expressly applying the Consumer Protection Act to other activities such as charitable solicitations[32] and chain distribution schemes.[33]

██ It is the duty of this court to ascertain and give effect to the intent and purposes of the Legislature as expressed in its enactments. This court has held that the Consumer Protection Act "is not applicable and will not support a private action where there is a specific legislative declaration that the public does not have an interest in a particular subject matter." *Anhold v. Daniels,* 94 Wn.2d 40, 43, 614 P.2d 184 (1980), citing *Brown v. Charlton,* 90 Wn.2d 362, 583 P.2d 1188 (1978) with approval. That same reasoning applies where the Legislature has otherwise clearly evinced its intent that designated activities not be covered by the Consumer Protection Act as in this case.[34]

---

[30] Senate Journal, 43d Legislature, 1st Ex. Sess. (1973), at 1006.

[31] Senate Journal, 43d Legislature, 1st Ex. Sess. (1973), at 1006–08.

[32] Laws of 1973, 1st Ex. Sess., ch. 13, § 34; RCW 19.09.340.

[33] Laws of 1973, 1st Ex. Sess., ch. 33, § 2; RCW 19.102.020.

[34] *See Donovan v. Hotel, Motel & Restaurant Employees Local 19,* 700 F.2d 539, 545 n.8 (9th Cir. 1983) and the cases cited therein. *See also* 2A C. Sands,

Based on the foregoing three reasons, we perceive the intent of the Legislature to have been that residential landlord–tenant problems not be included within the Consumer Protection Act, RCW 19.86, either directly through that act or indirectly through means of the Residential Landlord–Tenant Act of 1973, RCW 59.18, and the per se doctrine.[35] Neither the statutory direction to liberally construe the Consumer Protection Act[36] nor the right to resort to remedies "otherwise provided by law"[37] as expressed in the Residential Landlord–Tenant Act of 1973, justify the judicial extension of a remedy at odds with a clearly demonstrated legislative intent to the contrary.

Thus, the trial court erred in holding as it did.

If, as argued by the Attorney General, it is important from a public policy standpoint for that office (and thereby for private litigants as well)[38] to be empowered to proceed under the Consumer Protection Act for egregious violations of the Residential Landlord–Tenant Act of 1973, then the request for such authority should appropriately be addressed to the Legislature.

Reversed and dismissed.

UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., concur.

DORE, J. (dissenting)—The public policy of this State of ensuring safe and sanitary rental housing, the broad enabling language of our Consumer Protection Act, RCW 19.86, and the interpretation given to federal law by

---

*Statutory Construction* § 48.18, at 234 (4th ed. 1973).

[35]*See generally Haner v. Quincy Farm Chems., Inc.,* 97 Wn.2d 753, 760–63, 649 P.2d 828 (1982).

[36]RCW 19.86.920.

[37]RCW 59.18.090(2).

[38]*See Lightfoot v. MacDonald,* 86 Wn.2d 331, 334–36, 544 P.2d 88 (1976); *Anhold v. Daniels,* 94 Wn.2d 40, 44–45, 614 P.2d 184 (1980).

numerous sister jurisdictions dealing with the same or similar matters, lead me to the unalterable conclusion that Washington residential landlord–tenant concerns are subject to the provisions of the Consumer Protection Act.

## RESIDENTIAL LANDLORD–TENANT ACT OF 1973

At common law, under the principle of caveat emptor, a landlord had no duty to provide habitable rental property, nor a duty to repair rental property. *Lincoln v. Farnkoff,* 26 Wn. App. 717, 719, 613 P.2d 1212 (1980). This legal position gave way to modern realities when this court afforded residential tenants the protection of an implied covenant of habitability. *Foisy v. Wyman,* 83 Wn.2d 22, 25–28, 515 P.2d 160 (1973). Following this lead, the Legislature enacted the Residential Landlord–Tenant Act of 1973 (Act). This Act modified the common law so as to require decent, safe and sanitary housing. It further added a covenant to repair to most residential rental agreements. *Lincoln,* at 719–20; *O'Brien v. Detty,* 19 Wn. App. 620, 621, 576 P.2d 1334, *review denied,* 90 Wn.2d 1020 (1978). The Act provides that any exemption from the statutory duties and obligations of tenant and landlord cannot "violate the public policy of this state in favor of the ensuring safe, and sanitary housing" and that any such exemption must have the approval of either the local prosecutor's office, the "consumer protection division of the attorney general's office", or the attorney for the tenant. RCW 59.18.360.

Although the Residential Landlord–Tenant Act of 1973 imposes upon the landlord the duty to keep the premises fit for human habitation, its remedial provisions are significantly qualified. Most notable is the section which requires the tenant to be current in the payment of rent before exercising any of the remedies accorded him under the provisions of the Act. *See* RCW 59.18.080. Requiring a low–income tenant to be current in rent undoubtedly deprives many such tenants of the remedial provisions of the Act. *See* Clocksin, *Washington's Residential Landlord–Tenant*

*Act of 1973,* 27 Wash. State Bar News No. 7, at 4, 27–28 (July 1973); Comment, *Washington Tenant Remedies and the Consumer Protection Act,* 10 Gonz. L. Rev. 559, 561–62 (1975). The protection afforded against retaliatory eviction for assertion of tenants' rights under the Act is circumscribed by a presumption that a landlord's termination is neither a reprisal nor retaliatory where the landlord serves notice to vacate for a tenant's breach of any obligation, including being in arrears in rent. The tenant's failure to overcome this presumption entitles the landlord to recover his costs, including attorney fees. *See* RCW 59.18.240, .250. Additionally, the right to terminate for constructive eviction is an illusory remedy where there is a serious housing shortage for low income tenants. If the tenant remains on the premises, he must await the repair process. In the event of judicial action, a court may grant damages or abatement of rent, but neither of these will restore the premises to a habitable state. *See* RCW 59.18.070, .090, .110. Although the Act does provide for attorney fees, an award is limited to instances of retaliatory action (RCW 59.18.250), recovery of deposits (RCW 59.18.280), wrongful exclusion from leasehold (RCW 59.18.290), and intentional termination of utilities (RCW 59.18.300). The Act does not provide attorney fees for breach of the duty to maintain habitable premises, nor are damages multiplied, except the tenant may recover up to two times the amount of a wrongfully held deposit. *See* RCW 59.18.280. As noted in Stoebuck, *The Law Between Landlord and Tenant in Washington: Part I,* 49 Wash. L. Rev. 291, 296 (1974), suits by tenants are generally economically not feasible when they rely on the remedial provisions of the Act:

> It seems to be a fact of life that there seldom is enough at stake between a residential landlord and tenant to make litigation worth the cost, at any rate, at the appellate level. In view of the paucity of residential cases, one might wonder how heavy an impact the 1973 Residential Landlord–Tenant Act will have on life in the state.

Despite these shortcomings, the majority finds that the comprehensive nature of the Act evidences an intent that the remedial provisions provided therein are all inclusive. The remedies set forth in the Residential Landlord–Tenant Act of 1973, however, are not exclusive. In addition to the specific remedies in the Act, specifically reserved is the right to resort to remedies otherwise provided by law. RCW 59.18.070, .090, .160, .170.

## CONSUMER PROTECTION ACT

The Consumer Protection Act is a particularly appropriate vehicle for enforcing the provisions of the residential landlord–tenant act where their violation affects the public interest of this state in ensuring safe and sanitary housing. The remedies which are available under the Consumer Protection Act are in addition to, and may be considered together with, any other available remedies. *MacCormack v. Robins Constr.*, 11 Wn. App. 80, 82, 521 P.2d 761 (1974). *See also State v. Ralph Williams' Northwest Chrysler Plymouth, Inc.*, 82 Wn.2d 265, 510 P.2d 233, 59 A.L.R.3d 1209 (1973). The Act's treble damages and attorney fees provisions are encouragement for low income tenants to seek redress under the Act. The injunctive provisions may be used to protect other tenants similarly situated.

The Consumer Protection Act declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . .". RCW 19.86.020. These broad prohibitions are the equivalent of enabling acts which allow the Attorney General or private individuals to translate state public policy in the area of consumer protection into law. The purpose of the Consumer Protection Act is to "complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition." RCW 19.86.920. At the same time, however, the Legislature made clear it does not wish to prohibit "acts or

practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest." RCW 19.86.920. In attempting to balance these two concerns, the Consumer Protection Act essentially copies the approach taken by the federal government in the Federal Trade Commission Act, 15 U.S.C. §§ 41–58 (1970), and further directs the courts to be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters. RCW 19.86.920.

This mandate received attention in *State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 275, 501 P.2d 290 (1972), *appeal dismissed,* 411 U.S. 945, 36 L. Ed. 2d 406, 93 S. Ct. 1927 (1973):

> In the final analysis, the interpretation of RCW 19.86.020 is left to the state courts. This enables us to arrive at the statute's meaning by the same "gradual process of judicial inclusion and exclusion" used by the federal courts. . . . But in each case the question of what constitutes an "unfair method of competition" or an "unfair or deceptive act or practice" under RCW 19.86.020 is for us, rather than the federal courts, to determine.

The majority completely ignores this judicial inclusion and exclusion process by finding that a legislative failure to specifically include landlord–tenant concerns within the ambit of the Consumer Protection Act requires judicial exclusion. The majority apparently assumes that if the Legislature had intended applicability of the Consumer Protection Act to residential landlord–tenant concerns, it would have so provided in the Residential Landlord–Tenant Act of 1973.

This was not the intention of the Legislature. In addition to legislatively designated activities, there is an endless multitude of business activities which may be within the ambit of the Consumer Protection Act. *See, e.g., Eastlake Constr. Co. v. Hess,* 102 Wn.2d 30, 686 P.2d 465 (1984), building contractors; *McRae v. Bolstad,* 101 Wn.2d 161, 676

P.2d 496 (1984), real estate sales; *Ulberg v. Seattle Bonded, Inc.,* 28 Wn. App. 762, 626 P.2d 522 (1981), collection agencies; *Tallmadge v. Aurora Chrysler Plymouth, Inc.,* 25 Wn. App. 90, 605 P.2d 1275 (1979), automobile sales; *Short v. Demopolis,* 103 Wn.2d 52, 691 P.2d 163 (1984), law practice; *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978), insurance business.

In *Salois,* we noted that some statutes contain a specific mandate that commission of a prohibited act shall be a violation of the Consumer Protection Act. Although in that case there was no such connecting link between the insurance code and the Consumer Protection Act, we declared insurance a matter of public interest and the insurer's breach of the insurance code constituted an unfair trade practice. *Salois,* at 359; *see also Rounds v. Union Bankers Ins. Co.,* 22 Wn. App. 613, 590 P.2d 1286 (1979).

This breadth of scope and the generality of the language of prohibition in the Consumer Protection Act result from the virtual impossibility of providing specific standards and definitions which would govern all unfair or deceptive practices. In drafting the Federal Trade Commission Act, Congress noted this situation:

> It is impossible to frame definitions which embrace all unfair practices. There is no limit to human inventiveness in this field. Even if all known unfair practices were specifically defined and prohibited, it would be at once necessary to begin over again. If Congress were to adopt the method of definition, it would undertake an endless task. It is also practically impossible to define unfair practices so that the definition will fit business of every sort in every part of this country. Whether competition is unfair or not generally depends upon the surrounding circumstances of the particular case. What is harmful under certain circumstances may be beneficial under different circumstances.

H.R. Conf. Rep. No. 1142, 63d Cong., 2d Sess. 19 (1914); *see also* The Washington Consumer Advisory Council,

*Consumer Protection in the State of Washington* 42–43 (1960).

Those jurisdictions which have consumer protection acts similarly patterned after federal statutes and which have had occasion to address landlord–tenant concerns, have unanimously held that landlord–tenant activities are within the ambit of their respective consumer protection acts.

The leading decision addressing this issue is *Commonwealth v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812 (1974). In that case, the Supreme Court of Pennsylvania held that the leasing of residential housing was intended to fall within the purview of the Pennsylvania Consumer Protection Law. The court held that the remedial purposes behind the law mandated a liberal construction of the law's terms so that the prevention of unfair or deceptive trade practices might be accomplished. As support for its finding, the court cited similar language in section 5 of the Federal Trade Commission Act and court decisions under the federal statute which had applied section 5 to the leasing of property.

We have seen, however, that Congress chose not to delineate precisely the type of unfair and deceptive practices outlawed; rather, it gave the Commission a deliberately flexible standard. *FTC v. Sperry & Hutchinson Co.,* [405 U.S. 233, 31 L. Ed. 2d 170, 92 S. Ct. 898 (1972)] 405 U.S. at 239–240, 92 S.Ct. at 903. It is altogether inconsistent with the congressional intent that section 5 be a broad, all–inclusive trade regulation statute, to imply an exception for leases. Moreover, the argument that no specific mention is made of leasing really cuts the other way, in view of Congress' explicitness when it desired to make an exception from the jurisdiction of section 5. See 15 U.S.C.A. § 45(a)(6) (1963).

Also, there are numerous cases under section 5 in which the Commission sought to enjoin unfair and deceptive methods in connection with the leasing of property. . . . Aside from judicial decisions, administrative proceedings initiated by the Commission have resulted in section 5 jurisdiction over leases. . . .

No support in the federal precursors of the Consumer Protection Law can be found for an exclusion for leasing from the Law's broad prohibition of unfair and deceptive practices in market transactions. On the other hand, the legislative history of, decisions interpreting, and FTC proceedings under section 5 of the FTC Act strongly counsel that the leasing of housing is covered by the Consumer Protection Law.

(Footnotes and citations omitted.) *Commonwealth,* at 464–66.

The court also considered the statutory language which defined "trade or commerce" and reviewed the defendants' contention that the lease of residential housing did not fall within the phrase's definition. An extensive review of modern case law in other jurisdictions, traditional common law conceptions of the nature of a lease, the pragmatic and functional approach of the Legislature when attempting to solve societal problems, and the consequences of a contrary finding all contributed to the court's holding that the term "trade or commerce" includes the business of leasing housing services.

We cannot presume that the Legislature when attempting to control unfair and deceptive practices in the conduct of trade or commerce intended to be strictly bound by common–law formalisms. Rather the more natural inference is that the Legislature intended the Consumer Protection Law to be given a pragmatic reading—a reading consistent with modern day economic reality. That pragmatic reading dictates that purchasers of rental housing be treated as consumers and, therefore, within the class of persons sought to be protected by the Consumer Protection Law.

*Commonwealth,* at 469–70. The court further held that to "refuse to apply the Consumer Protection Law to the leasing of residential housing would needlessly insulate a great percentage of market transactions from the Law's salutary antifraud provisions. Only by exalting form over substance could such a course be pursued." *Commonwealth,* at 478.

Finally, the court analyzed the argument that residential leasing should be excluded from the Consumer Protection

Law because it was not a designated activity within the ambit of the legislation. The court held that Pennsylvania has a "deceptive trade practices" type statute which contains broad language prohibiting unfair or deceptive trade practices. The statute then proceeds to set out specific prohibited acts as well. The court recognized the ever-changing nature of fraudulent business practices and held that a reading of the statutes which limited prohibited conduct to only those specifically enumerated examples of unfair trade practices would thwart the legislative intendment. *Commonwealth*, at 479–80.

In *McGrath v. Mishara*, 386 Mass. 74, 434 N.E.2d 1215 (1982), the Supreme Court of Massachusetts held that the mere fact that statutes governing improper retention of rental security deposits and the chapter governing unfair or deceptive trade practices contain overlapping prohibitions and remedies did not establish legislative intent to preclude their concurrent application. The protection of the chapter governing the regulation of business for consumers' protection was held to extend to the landlord–tenant relationship.

The Supreme Court of Connecticut, under similar analysis, held that landlord violations of the Residential Landlord and Tenant Act amounted to unfair or deceptive acts or practices under the Connecticut Unfair Trade Practices Act. *Conaway v. Prestia*, 191 Conn. 484, 464 A.2d 847, 851–52 (1983).

The Illinois appellate court in *People ex rel. Fahner v. Hedrich*, 108 Ill. App. 3d 83, 438 N.E.2d 924 (1982) held that landlord violations of the Mobile Home Landlord and Tenant Act were subject to Attorney General actions for unfair or deceptive practices under the Consumer Fraud and Deceptive Business Practices Act. The court found support for its view in both federal law and the decisions of sister jurisdictions. *Accord, People ex rel. Fahner v. Testa*, 112 Ill. App. 3d 834, 445 N.E.2d 1249 (1983).

Coverage of the Illinois Consumer Fraud and Deceptive Business Practices Act was extended to the residential landlord–tenant relationship in *Carter v. Mueller*, 120 Ill.

App. 3d 314, 457 N.E.2d 1335 (1983); *see also Love v. Pressley,* 34 N.C. App. 503, 239 S.E.2d 574 (1978); *Commonwealth v. DeCotis,* 366 Mass. 234, 316 N.E.2d 748 (1974).

The only tenable argument for the majority's position is the Legislature's rejection of an amendment to the Residential Landlord–Tenant Act of 1973 which, as proposed, would have provided:

> Any violation of the provisions of this chapter shall be construed, for the purposes of application of the Consumer Protection Act, chapter 19.86 RCW, to constitute an unfair or deceptive act or practice or an unfair method of competition in the conduct of trade or commerce.

Senate Journal, 43d Legislature (1973), at 1006. Rejection of this amendment, however, does not support the majority's finding that the Legislature evinced an intent that landlord–tenant concerns not be covered by the Consumer Protection Act. Generally the rejection of an amendment indicates that the Legislature does not intend the legislation to include the provisions embodied in the rejected amendment. 2A C. Sands, *Statutory Construction* § 48.18, at 341 (4th ed. 1973). The language of the proposed amendment would have provided that *any* violation of the Residential Landlord–Tenant Act of 1973 would constitute a violation of the Consumer Protection Act. The Legislature simply rejected a per se basis for application of the Consumer Protection Act to residential landlord–tenant concerns which do not affect the public interest. *See, e.g., Haner v. Quincy Farm Chems., Inc.,* 97 Wn.2d 753, 762, 649 P.2d 828 (1982); *Moolick v. Lawson,* 33 Wn. App. 665, 655 P.2d 1185 (1982). The Legislature did not evince an intent to prohibit the Attorney General (or private litigants) from proceeding under the Consumer Protection Act for egregious violations of the Residential Landlord–Tenant Act of 1973 affecting the public interest of ensuring safe and sanitary housing. *See Anhold v. Daniels,* 94 Wn.2d 40,

46, 614 P.2d 184 (1980); *Salois v. Mutual of Omaha Ins. Co.*, 90 Wn.2d 355, 581 P.2d 1349 (1978).

The Residential Landlord–Tenant Act of 1973 specifically reserves the right to resort to remedies otherwise provided by law. The Consumer Protection Act provides such an appropriate remedy for both the private litigant and Attorney General. Although the Attorney General is not granted express authority to proceed under the Residential Landlord–Tenant Act of 1973, his authority under the Consumer Protection Act is broadly defined.

> The attorney general may bring an action in the name of the state against any person to restrain and prevent the doing of any act herein prohibited or declared to be unlawful; and the prevailing party may, in the discretion of the court, recover the costs of said action including a reasonable attorney's fee.
>
> The court may make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any act herein prohibited or declared to be unlawful.

RCW 19.86.080.

In *State v. Tacoma–Pierce Cy. Multiple Listing Serv.*, 95 Wn.2d 280, 622 P.2d 1190 (1980), we noted that the Attorney General lacked standing to enforce real estate brokers' and salesmen's statutes against boards of realtors but that such fact was of no significance in an action by the Attorney General against such boards for violations of the Consumer Protection Act.

Similarly, the Supreme Court of California in *People v. McKale,* 25 Cal. 3d 626, 602 P.2d 731, 159 Cal. Rptr. 811 (1979) held that the lack of express authorization of a district attorney to prosecute violations of the Mobilehome Parks Act did not preclude district attorney action pursuant to the Consumer Protection Act for activity which constituted unfair or deceptive practices.

CONCLUSION

I would hold that the Attorney General had authority to bring this action for violations of the Consumer Protection Act. Defendant Schwab's leasing of submarginal housing on an "as is" basis and exempting himself from providing repairs or landlord services is unlawful and contrary to public policy of providing decent, safe and sanitary housing. This holding is in accord with the overwhelming weight of authority in both federal law and the decisions of sister jurisdictions and comports with both the purpose and intent of the Residential Landlord–Tenant Act of 1973 and the Consumer Protection Act.

WILLIAMS, C.J., concurs with DORE, J.

Reconsideration denied March 5, 1985.