

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, )<br><br>Respondent, )<br>)<br>v. )<br>)<br>LG ELECTRONICS, INC.; LG )<br>ELECTRONICS U.S.A. INC.; )<br>KONINKLIJKE PHILIPS )<br>ELECTRONICS N.V. a/k/a ROYAL )<br>PHILIPS ELECTRONICS N.V.; )<br>PHILIPS ELECTRONICS NORTH )<br>AMERICA CORPORATION; TOSHIBA )<br>CORPORATION; TOSHIBA AMERICA )<br>ELECTRONIC COMPONENTS, INC.; )<br>HITACHI, LTD.; HITACHI DISPLAYS, )<br>LTD.; HITACHI ELECTRONIC )<br>DEVICES (USA), INC.; and HITACHI )<br>ASIA, LTD., )<br>)<br>Petitioners, )<br>)<br>PHILIPS ELECTRONICS INDUSTRIES )<br>(TAIWAN), LTD.; SAMSUNG SDI CO., )<br>LTD. f/k/a SAMSUNG DISPLAY )<br>DEVICE CO., LTD.; SAMSUNG SDI )<br>AMERICA, INC.; SAMSUNG SDI )<br>MEXICO S.A. DE C.V.; SAMSUNG SDI )<br>BRASIL LTDA.; SHENZHEN )<br>SAMSUNG SDI CO., LTD.; TIANJIN )<br>SAMSUNG SDI CO., LTD.; SAMSUNG )<br>SDI (MALAYSIA) SDN. BHD.; MT )<br>PICTURE DISPLAY CO., LTD.; )<br>PANASONIC CORPORATION f/k/a )<br>MATSUSHITA ELECTRIC INDUSTRIAL)<br>CO., LTD.; PANASONIC ) | DIVISION ONE<br><br>No. 70299-8-I<br>(linked with No. 70298-0-I)<br><br>PUBLISHED OPINION |

CORPORATION OF NORTH )
AMERICA; CHUNGHWA PICTURE )
TUBES LTD.; CPTF OPTRONICS CO., )
LTD.; and CHUNGHWA PICTURE )
TUBES (MALAYSIA) SDN. BHD., )
                                         )
                Defendants. )      FILED: December 22, 2014
                                           )

DWYER, J. — Resolution of this matter, which comes before us on discretionary review, requires us to ascertain the legislature's intent in enacting and amending certain provisions of the Washington Consumer Protection Act (CPA).[1] Two questions have been certified for review. First, when, pursuant to the CPA, the Attorney General of Washington brings an action as parens patriae[2] on behalf of Washington residents, is his action subject to the four-year limitation period contained within RCW 19.86.120? Second, is his action an "inherently sovereign" one that, by virtue of being brought for the "benefit of the state," is exempted from any other statutory limitation period by RCW 4.16.160?

We hold that when the legislature authorized the Attorney General to bring an action to enforce the CPA as parens patriae, it did not intend for such actions to be subject to the limitation period set forth in RCW 19.86.120. Further, we hold that it was the legislature's intent that such actions, the authority for which inheres in the notion of state sovereignty, be exempted from any otherwise applicable statutory limitation period. Given the manner in which we resolve these certified questions, we are satisfied that the trial court did not err in denying the Petitioners' motion to dismiss the Attorney General's complaint. Accordingly, we affirm.

---

[1] Chapter 19.86 RCW.

[2] Literally, "parent of his or her country." BLACK'S LAW DICTIONARY 1287 (10th ed. 2014).

I

On May 1, 2012, the Attorney General,[3] acting on behalf of the State and as parens patriae on behalf of persons residing in Washington, brought suit against more than 20 foreign corporate entities.[4] While geographically diffuse, the defendants had a common characteristic—past participation in the global market for cathode ray tubes (CRTs).[5] The Attorney General alleged that the defendants had, in violation of the CPA, participated in a worldwide conspiracy to raise prices and set production levels in the market for CRTs, which caused Washington State residents and State agencies to pay supracompetitive prices for CRT products.[6] The Attorney General averred that the defendants had engaged in such anticompetitive conduct beginning, at the latest, on March 1, 1995, and ending, at the earliest, on November 25, 2007. By way of relief, the Attorney General requested, among other things, that the trial court (1) issue appropriate injunctions to prohibit illegal activity, (2) award any and all civil penalties permitted by law, and (3) award damages and restitution to the State on behalf of its agencies and residents.

Upon receiving service of process, 10 of the defendants (hereinafter

---

[3] At the time that the complaint was filed, the Attorney General of Washington was Robert M. McKenna. The current Attorney General is Robert W. Ferguson.

[4] These entities were scattered across four continents and ten different countries, including South Korea, Taiwan, China, Japan, Malaysia, Singapore, the United States of America, Mexico, Brazil, and the Netherlands.

[5] A cathode ray tube is a display technology used in televisions, computer monitors, and other specialized applications. According to the Attorney General, CRTs, until recently, represented the "dominant technology for manufacturing televisions and computer monitors."

[6] The Attorney General defined CRT products as "CRTs and products containing CRTs, such as televisions and computer monitors."

Petitioners[7]) jointly filed a motion to dismiss the complaint pursuant to CR 12(b)(6).[8] Therein, the Petitioners contended that the Attorney General's claims were time-barred by operation of a four-year limitation period contained within the CPA. In order to avoid the preclusive effect of this limitation period, the Petitioners asserted, the complaint needed to be filed by November 25, 2011. As noted, the complaint was not filed until May 1, 2012.

The Attorney General opposed the Petitioners' motion to dismiss, arguing that the causes of action pleaded in his complaint were not time-barred by the limitation period in the CPA or by any otherwise applicable statutory limitation period.

On March 28, 2013, King County Superior Court Judge Richard Eadie denied the Petitioners' motion to dismiss.

Thereafter, pursuant to RAP 2.3(b)(4),[9] the Petitioners sought and obtained from the trial court a certification for discretionary review of the order denying their dispositive motion. Finding that the criteria for certification pursuant to RAP 2.3(b)(4) had been satisfied, the trial court certified for immediate review

---

[7] Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Toshiba Corporation, Toshiba America Electronic Components, Inc., LG Electronics, Inc., LG Electronics U.S.A., Inc., Hitachi, Ltd., Hitachi Displays, Ltd., Hitachi Electronic Devices (USA) Inc., and Hitachi Asia, Ltd.

[8]   **(b) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted . . . .

[9]   **(b) Considerations Governing Acceptance of Review.** Except as provided in section (d), discretionary review may be accepted only in the following circumstances:
. . .
      (4) The superior court has certified, or all the parties to the litigation have stipulated, that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation.

the following two questions:[10]

> (1) Whether the four-year statute of limitations under RCW 19.86.120 applies to the Washington's Attorney General's Complaint brought pursuant to its *parens patriae* authority under RCW 19.86.080 that seeks actual damages[11] for violations of RCW 19.86.030?
>
> (2) Whether RCW 4.16.160 should be applied to the Washington Attorney General's *parens patriae* antitrust lawsuit seeking actual damages[12] and restitution for citizens of Washington?

On August 2, 2013, finding that the "trial court's certification is well taken," a commissioner of this court granted discretionary review of the preceding questions. Neither the Petitioners nor the Attorney General moved to modify the commissioner's order granting discretionary review.

Separately, the Attorney General, in response to a trial court order dismissing his claims for lack of personal jurisdiction over certain defendants, filed a notice of appeal in this court.[13] That appeal is to be resolved by separate opinion. The underlying litigation has been stayed.

---

[10] These questions were identical to those that had been proposed by the Petitioners.

[11] We consider only whether the limitation period applies to the cause of action brought by the Attorney General in his capacity as parens patriae.

[12] The formulation of this second question could be construed as an invitation to consider whether RCW 4.16.160 exempts the Attorney General's claim for actual damages pursuant to RCW 19.86.090 from the four-year limitation period set forth in RCW 19.86.120. To the extent that this invitation was, in fact, extended, we decline to accept it.

The focal cause of action on discretionary review, as evidenced by the trial court record and by the merits briefing submitted by the parties, is the parens patriae claim. Although the parties' litigation strategy does not dictate the scope of discretionary review, for purposes of our review in this matter, we choose to address only the issue of whether RCW 4.16.160 exempts the parens patriae cause of action from any otherwise applicable statute of limitation. See City of Bothell v. Barnhart, 156 Wn. App. 531, 538 n.2, 234 P.3d 264 (2010) (noting that, pursuant to RAP 2.3(e), the appellate court may specify the issue or issues as to which discretionary review is granted), aff'd 172 Wn.2d 223, 257 P.3d 648 (2011).

[13] Five of the Petitioners in this matter were found not to be subject to the Attorney General's attempt to exercise personal jurisdiction over them: Koninklijke Philips Electronics N.V., Hitachi Displays, Ltd., Hitachi Asia, Ltd., Hitachi Electronic Devices (USA), Inc., and LG Electronics, Inc.

II

As to the first question for which discretionary review was granted, the Petitioners insist that, under *any* potentially applicable statute of limitation, the Attorney General's parens patriae claim brought pursuant to RCW 19.86.080 was untimely filed. They misperceive the appropriate inquiry—our mandate was not so unconstrained. Instead, our narrow task is to determine whether a *specific* statute of limitation, RCW 19.86.120, applies to the Attorney General's parens patriae claim. In resolving the first certified question, we hold that the legislature did not intend for RCW 19.86.120 to be applied to parens patriae claims brought by the Attorney General and, consequently, that the parens patriae claim in this matter is not time-barred by operation of RCW 19.86.120.

Our review is de novo. See Johnson v. Recreational Equip., Inc., 159 Wn. App. 939, 946, 247 P.3d 18 (2011) ("Questions of statutory interpretation are reviewed de novo."); see also Cutler v. Phillips Petroleum Co., 124 Wn.2d 749, 755, 881 P.2d 216 (1994) ("A trial court's ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under CR 12(b)(6) is a question of law and is reviewed de novo."); Bennett v. Computer Task Grp., Inc., 112 Wn. App. 102, 106, 47 P.3d 594 (2002) (whether a statutory limitation period applies to bar a claim is reviewed de novo).

Familiar interpretive principles guide our construction of legislative enactments. "Our primary duty in interpreting a statute is to discern and implement legislative intent." Johnson, 159 Wn. App. at 946 (citing Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). If a

"statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Campbell & Gwinn, 146 Wn.2d at 9-10. "The plain meaning of a statute may be discerned 'from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (quoting Campbell & Gwinn, 146 Wn.2d at 11). While we may, in seeking to perceive the plain meaning of a statute, examine "'the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole,'" we "'must not add words where the legislature has chosen not to include them,'" and "must 'construe statutes such that all of the language is given effect.'" Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting State v. Engel, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009); Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003)).

The CPA, which was modeled on the federal antitrust statutes, is meant "to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition." RCW 19.86.920; accord Blewett v. Abbott Labs., 86 Wn. App. 782, 786-87, 938 P.2d 842 (1997). While enactment of the CPA in 1961 postdated the advent of federal antitrust legislation in 1890, it is well settled that the latter was "intended . . . to supplement, not displace, state antitrust remedies." California v. ARC Am. Corp., 490 U.S. 93, 101 n.4, 102, 109 S. Ct. 1661, 104 L. Ed. 2d 86 (1989) (noting that

21 states had enacted their own antitrust laws by the time that the Sherman Act[14]—the inaugural effort to regulate antitrust at the federal level—became effective). Tellingly, the titular author of the Sherman Act—Senator John Sherman of Ohio—explained that it "'does not announce a new principle of law, but applies old and well recognized principles of the common law to the complicated jurisdiction of our State and Federal Government.'" Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 531, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983) (quoting 21 Cong. Rec. 2456 (1890)); accord ARC, 490 U.S. at 101 ("it is plain that this is an area traditionally regulated by the states"). These authorities, both dated and contemporary, reveal that, despite the expansion of antitrust regulation at the federal level in the wake of the Sherman Act,[15] the basic federalism calibration has remained, for the most part, unchanged.[16]

Nevertheless, in enacting the CPA, our legislature made clear its intent for Washington courts to be guided by federal court and federal trade commission interpretations of federal statutes dealing with the same or similar matters.

> It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters and that in deciding whether conduct restrains or monopolizes trade or commerce or may substantially lessen competition, determination of the relevant market or effective area of competition shall not be

---

[14] 15 U.S.C. §§ 1-7.

[15] Examples of this expansion include the Clayton Act of 1914 (codified as amended at 15 U.S.C. §§ 12-27) and the Federal Trade Commission Act of 1914 (codified as amended at 15 U.S.C. §§ 41-58).

[16] Commenting on the interplay between state and federal law, the California Supreme Court observed, "the coordination of federal and state antitrust enforcement has become a prime example of 'cooperative federalism.'" Younger v. Jensen, 26 Cal. 3d 397, 405, 161 Cal. Rptr. 905, 605 P.2d 813 (1980).

limited by the boundaries of the state of Washington. To this end this act shall be liberally construed that its beneficial purposes may be served.

RCW 19.86.920.

While not bound by these interpretations, "in practice Washington courts have uniformly followed federal precedent in matters described under the Consumer Protection Act." Blewett, 86 Wn. App. at 787; accord State v. Ralph Williams' Nw. Chrysler Plymouth, Inc., 82 Wn.2d 265, 271, 510 P.2d 233 (1973) ("Although we are not conclusively bound by the relevant federal cases, we find their reasoning persuasive."); State v. Black, 100 Wn.2d 793, 676 P.2d 963 (1984) (where the CPA provision being construed had been taken verbatim from its federal analog, our Supreme Court relied on federal court interpretations to reach its conclusion). Washington courts have followed federal precedent in order "to minimize conflict between the enforcement of state and federal antitrust laws and to avoid subjecting Washington businesses to divergent regulatory approaches to the same conduct." Blewett, 86 Wn. App. at 788. Consequently, "departure from federal law . . . must be for a reason rooted in our own statutes or case law and not in the general policy arguments that this court would weigh if the issue came before us as a matter of first impression." Blewett, 86 Wn. App. at 788.

In this matter, the Attorney General alleged that the defendants violated RCW 19.86.030, which provides that "[e]very contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is hereby

declared unlawful." As with section 1 of the Sherman Act,[17] however, RCW 19.86.030 does not itself establish a cause of action or authorize particular parties to enforce its provisions. Rather, in separate provisions, the CPA authorizes specific causes of action and identifies the individuals or entities permitted to bring those actions. Two of these separate provisions—RCW 19.86.080 and 19.86.090—warrant examination in some detail.

The first provision, RCW 19.86.080, authorizes the Attorney General to bring an action in the name of the State or as parens patriae on behalf of Washington residents.[18] RCW 19.86.080(1). The Attorney General is authorized to seek injunctive relief, and courts are permitted, at their discretion, to award restitution that is "necessary to restore to any person in interest any moneys or property . . . acquired by means of any act" prohibited by the CPA. RCW 19.86.080(1)-(3). There are limitations, however, to a court's discretion in awarding restitution pursuant to RCW 19.86.080. Courts "shall exclude from the amount of" restitution "awarded in an action pursuant to this subsection any amount that duplicates amounts that have been awarded for the same violation" and "should consider consolidation or coordination with other related actions, to the extent practicable, to avoid duplicate recovery." RCW 19.86.080(3).

Similarly, federal law authorizes state attorneys general to bring suit as parens patriae on behalf of persons residing in their state. 15 U.S.C. § 15c.

---

[17] "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.

[18] Washington's legislature was not alone in creating this type of claim. Many other states have authorized their attorneys general to bring a claim as parens patriae on behalf of their residents seeking damages or restitution. Jonathan T. Tomlin & Dale J. Giali, Federalism and the Indirect Purchaser Mess, 11 GEO. MASON L. REV. 157, 163 (2002).

However, while RCW 19.86.080 permits an award of restitution on behalf of both direct and indirect purchasers,[19] 15 U.S.C. § 15c prohibits any monetary recovery on behalf of indirect purchasers.[20] Compare RCW 19.86.080(3), and State v. AU Optronics Corp., 180 Wn. App. 903, 927, 328 P.3d 919 (2014), and Blewett, 86 Wn. App. at 789-90, with 15 U.S.C. § 15c, and Kansas v. UtiliCorp United, Inc., 497 U.S. 199, 110 S. Ct. 2807, 111 L. Ed. 2d 169 (1990), and Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977).[21]

The second provision, RCW 19.86.090, authorizes both certain persons[22] and the State to bring a cause of action seeking injunctive relief, actual damages, or both for violations of certain CPA provisions. Similarly, federal law authorizes both certain persons[23] and the United States to bring a cause of action seeking injunctive relief and actual damages[24] for violations of certain federal antitrust laws. See 15 U.S.C. §§ 15, 15a, 25, 26. RCW 19.86.090 authorizes the State to seek actual damages as either a direct or indirect purchaser; however, in most instances,[25] neither federal law nor the CPA permits "persons" who are

---

[19] Indirect purchasers are those who are not "immediate buyers" from the antitrust defendant. Kansas v. UtiliCorp United, Inc., 497 U.S. 199, 207, 110 S. Ct. 2807, 111 L. Ed. 2d 169 (1990).

[20] Two exceptions to this prohibition have been recognized: the "cost-plus" exception and the "control" exception. See, e.g., In re Wyoming Tight Sands Antitrust Cases, 866 F.2d 1286, 1290 (10th Cir. 1989). Neither exception is at issue herein.

[21] The United States Supreme Court has held squarely that the "indirect purchaser rule" of Illinois Brick does not preempt state law. ARC, 490 U.S. at 101.

[22] "[P]erson" includes "the counties, municipalities, and all political subdivisions of this state." RCW 19.86.090.

[23] "[P]erson" includes "corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country." 15 U.S.C. § 12.

[24] "Any person, firm, corporation, or association" may also seek injunctive relief pursuant to federal law. 15 U.S.C. § 26.

[25] As noted, supra at n.20, several exceptions to this rule exist.

considered indirect purchasers to seek actual damages.[26] Compare RCW

19.86.090, with Illinois Brick, 431 U.S. 720, and Blewett, 86 Wn. App. 782.

The CPA's sole statute of limitation is found in RCW 19.86.120. Only

claims for damages brought pursuant to RCW 19.86.090 are expressly made

subject to this limitation period. See RCW 19.86.120 ("Any action to enforce *a*

*claim for damages under RCW 19.86.090* shall be forever barred unless

commenced within four years after the cause of action accrues." (emphasis

added)). Similarly, federal law contains a four-year statutory limitation period.

See 15 U.S.C. § 15b. However, while RCW 19.86.120 does not purport to make

subject to its four-year limitation period parens patriae claims brought by the

Attorney General pursuant to RCW 19.86.080, 15 U.S.C § 15b does, in fact,

expressly make its four-year limitation period applicable to parens patriae claims

brought by state attorneys general pursuant to 15 U.S.C. § 15c.

The description of the aforesaid CPA provisions reflects their current

status. Each provision, however, has been amended at least once. In order to

place in context the content of and the interrelationship between these

provisions, a brief account of the manner in which the legislature has molded the

provisions since the enactment of the CPA bears mentioning.

In 1961, as part of the bill that created the CPA, the legislature authorized

the Attorney General to bring, pursuant to RCW 19.86.080, an action in the name

of the State, seeking to enjoin certain behavior. LAWS OF 1961, ch. 216, § 8. The

legislature also authorized certain persons and the State to bring an action for

---

[26] Many states have, unlike Washington, enacted legislation that allows indirect purchasers to recover actual damages pursuant to state antitrust statutes. Tomlin & Giali, supra, n.18, at 161.

injunctive relief and damages pursuant to RCW 19.86.090. LAWS OF 1961, ch. 216, § 9. While actions seeking damages were made subject to a four-year limitation period contained in RCW 19.86.120, actions brought by the Attorney General seeking injunctive relief were not. LAWS OF 1961, ch. 216, § 12.

In 1970, RCW 19.86.080 was amended so as to give courts discretion to award restitution when necessary "to restore to any person in interest any moneys or property . . . acquired by means of any act herein prohibited or declared to be unlawful." LAWS OF 1970, ch. 26, § 1. While both RCW 19.86.090 and RCW 19.86.120 were also amended at this time, the limitation period in RCW 19.86.120 was not expressly extended to encompass actions brought pursuant to RCW 19.86.080. LAWS OF 1970, ch. 26, §§ 1, 5. Since 1970, RCW 19.86.120 has not been amended.

Not long after these 1970 amendments, our Supreme Court announced that actions brought by the Attorney General pursuant to the CPA were for the public benefit. See, e.g., Lightfoot v. MacDonald, 86 Wn.2d 331, 334, 544 P.2d 88 (1976). As a result, the court concluded that, even in the event that private individuals were to receive restitution as a result of an action brought by the Attorney General pursuant to RCW 19.86.080, such actions nonetheless were meant to benefit the public. Seaboard Sur. Co. v. Ralph Williams' Nw. Chrysler Plymouth, Inc., 81 Wn.2d 740, 746, 504 P.2d 1139 (1973) ("The Attorney General's responsibility in bringing cases [pursuant to RCW 19.86.080] is to protect the public . . . . Where relief is provided for private individuals by way of restitution, it is only incidental to and in aid of the relief asked on behalf of the

public."); see also Ralph Williams', 82 Wn.2d at 277 ("Suits for injunctive relief and restitution enforce the laws of the particular jurisdiction in the public interest by restoring the status quo.").

In 2007, the legislature amended both RCW 19.86.080 and RCW 19.86.090.[27] LAWS OF 2007, ch. 66, §§ 1-2. In amending RCW 19.86.080, the legislature authorized the Attorney General to bring parens patriae claims on behalf of Washington residents, and expressly permitted recovery in the form of restitution on behalf of both direct and indirect purchasers who had been injured. LAWS OF 2007, ch. 66, § 1. In amending RCW 19.86.090, the legislature expressly authorized the State to seek actual damages as either a direct or indirect purchaser.[28] LAWS OF 2007, ch. 66, § 2.

We turn, now, to our task of ascertaining the legislature's intent. Specifically, we were asked to determine whether the legislature intended for the four-year limitation period in RCW 19.86.120 to apply to parens patriae claims brought by the Attorney General pursuant to RCW 19.86.080. We hold that this was not the legislature's intent.

We begin with the words in RCW 19.86.120, which suggest that the legislature intended its four-year limitation period to apply only to damages claims brought pursuant to RCW 19.86.090. See RCW 19.86.120 ("Any action to

---

[27] These amendments were, at least in part, in response to the following observation made by this court in Blewett: although "a private plaintiff must 'be injured in his or her business or property' in order to bring any suit under the Act, this requirement does not exist in [RCW 19.86.080]," meaning that "the indirect purchaser is not entirely without a remedy." 86 Wn. App. at 790; LAWS OF 2007, ch. 66, § 1.

[28] RCW 19.86.090 was amended twice between 1970 and 2007, and again following the 2007 amendment. LAWS OF 1983, ch. 288, § 3; LAWS OF 1987, ch. 202, § 187; LAWS OF 2009, ch. 371, § 1. However, given that the content of these amendments have no impact on our analysis, we do not further dwell upon them.

enforce *a claim for damages under RCW 19.86.090* shall be forever barred unless commenced within four years after the cause of action accrues." (emphasis added)). Conventional wisdom holds that when the legislature expresses one thing in a statute, "[o]missions are deemed to be exclusions." In re Det. of Williams, 147 Wn.2d 476, 491, 55 P.3d 597 (2002). Here, the legislature expressly made claims for damages under RCW 19.86.090 subject to the four-year limitation period; it did not mention claims brought pursuant to RCW 19.86.080. Moreover, despite its willingness to amend each of the foregoing provisions—including RCW 19.86.120—the legislature has not seen fit to include actions brought pursuant to RCW 19.86.080 within the ambit of RCW 19.86.120. While not necessarily dispositive of the issue, these facts are problematic for the Petitioners' theory, which relies on an assumption that the legislature unintentionally did not subject parens patriae claims to the CPA's limitation period.

Nonetheless, the Petitioners maintain that—the text of RCW 19.86.120 notwithstanding—the legislature did, in fact, intend to make parens patriae claims subject to RCW 19.86.120. This unspoken intent, they posit, may be ascertained by considering analogous federal antitrust provisions, understanding the animating purposes of RCW 19.86.120, and observing the structure and context of the CPA as a whole.[29]

---

[29] As an initial matter, the Petitioners argue that two Washington cases, Imperato v. Wenatchee Valley College, 160 Wn. App. 353, 247 P.3d 816 (2011), and Eastwood v. Cascade Broadcasting Co., 106 Wn.2d 466, 722 P.2d 1295 (1986), establish that "there is no basis to conclude that the legislature intended to give [the Attorney General] an infinite period of time in which to file" his parens patriae claim. Petitioners' Opening Br. at 29-31. As we explained, our inquiry as to the first certified question is not whether the legislature intended to establish an infinite period of time in which the Attorney General may file a parens patriae claim. Instead, we

The Petitioners first assert that, in order to maintain conformity with federal antitrust law—which, as explained, imposes a four-year limitation period upon parens patriae claims—RCW 19.86.120 must be applied to the Attorney General's parens patriae claim brought pursuant to RCW 19.86.080. Despite pressing for "conformity," the Petitioners fail to direct us to any interpretations of the analogous federal statute of limitation, whether in the form of a final decision by a federal court or a final order of the Federal Trade Commission. By this omission, it would seem that the Petitioners wish for us to harmonize facially distinct state and federal statutory provisions, which were authored and enacted by different legislative bodies, each of which is beholden to a different electorate.[30] This approach is incompatible with both our legislature's directive in RCW 19.86.920, and the meaning that has subsequently been ascribed to it by Washington appellate courts.

---

must discern whether the legislature intended RCW 19.86.120 to apply to parens patriae claims brought pursuant to RCW 19.86.080. Neither case cited by the Petitioners is useful in seeking to discern the legislature's intent.

In Imperato, the plaintiff filed an unfair labor practices claim in superior court and argued that because the six-month statute of limitation otherwise applicable to his claim only explicitly applied when the claim was filed before the Public Employees Relations Commission (PERC), the six-month limitation period did not bar his claim. 160 Wn. App. at 360-62. The issue before Division Three was whether the plaintiff could avoid the statute of limitation by filing his complaint in superior court instead of before PERC. Given that, in resolving this issue, Division Three sought to discern whether the legislature intended for a statute of limitation to apply for the same claim but in a different venue, the precedential value of its decision is limited to its observation that "[w]hen interpreting a statute, a court's fundamental objective is to ascertain and carry out the legislature's intent." Imperato, 160 Wn. App. at 361.

In Eastwood, our Supreme Court considered whether a false light invasion of privacy claim was governed by the two-year statute of limitation for libel and slander or the three-year statute of limitation for injury to the person or rights of another. 106 Wn.2d at 469. In concluding that the two-year limitation period applicable to libel and slander applied, the court was "persuaded that because of the duplication inherent in false light and defamation claims . . . the same statute of limitations is applicable to both actions." Eastwood, 106 Wn.2d at 474. However, because the court was dealing with common law causes of action, it was not required to seek to ascertain legislative intent. Therefore, its decision does not inform ours.

[30] While this could be construed as an argument that the indirect purchaser rule of Illinois Brick preempts the CPA, the Petitioners do not purport to be maintaining such a position and, in any event, that position has been rejected by the United States Supreme Court. ARC, 490 U.S. at 101.

In any event, even had the Petitioners cited to relevant federal precedent, we would still have reason rooted in the CPA to depart from it. There is a noteworthy difference between the manner in which the United States Congress and our legislature have chosen to regulate anticompetitive behavior. When our legislature authorized the Attorney General to bring parens patriae claims on behalf of both direct and indirect purchasers, it unmistakably departed from federal law. The effect of this departure was to ensure that when the Attorney General exercises his authority as parens patriae pursuant to the CPA, the resultant protections afforded to Washington residents will be more robust than those offered by federal law.[31]

The Petitioners do not dispute that it was our legislature's intent to surpass the protections afforded by federal law. Rather, they insist that although our legislature departed from federal law vis-à-vis the "purchaser proximity" restrictions, it nevertheless intended to retain the temporal restrictions imposed by federal law. Because, however, the legislature did not expressly impose these temporal restrictions, the Petitioners have been forced to maintain, in effect, that our legislature was absentminded in failing to expressly subject parens patriae claims to the four-year limitation period in RCW 19.86.120.

We do not presume that the legislature acted in a negligent fashion when it authorized the bringing of parens patriae claims on behalf of direct and indirect purchasers, yet did not expressly subject such claims to the four-year limitation

---

[31] It is apparent, given our recent observation that "modern economic structures" will, in at least some cases, make it "unreasonable to expect" that antitrust defendants "would target Washington consumers directly," that these augmented protections are more than just a gloss on the federal regulatory regime. AU Optronics, 180 Wn. App. at 928.

period in RCW 19.86.120. Instead, in recognition of the fact that a departure from *both* the "purchaser proximity" and temporal restrictions imposed by federal law is consistent with the general goal of outstripping the protections afforded by federal law, we conclude that the legislature's silence with regard to temporal restrictions reveals an intent to keep parens patriae claims unbridled by RCW 19.86.120.

The Petitioners next assert that, in order to realize the purposes of RCW 19.86.120, the four-year limitation period must be applied to the Attorney General's parens patriae claim. If the limitation period is not applied, they warn, a class action lawsuit brought by direct purchasers represented by private counsel would be subject to the four-year limitation period, whereas the identical class represented by the Attorney General would have an unlimited period in which their rights could be asserted. The Petitioners argue that this result would undermine the goal of RCW 19.86.120, which is to provide repose, grant finality, and shield defendants and the judicial system from stale claims.

It is true that, in many instances, the justifications for statutory limitation periods are consistent with those identified by the Petitioners. Yet, rather than identifying *specific* purposes animating RCW 19.86.120, the Petitioners treat these conventional justifications as unassailable proof that, in order to vindicate the purposes of RCW 19.86.120, its limitation period must be applied to the Attorney General's parens patriae claim. Given that the legislature, in amending

RCW 19.86.080 so as to authorize parens patriae claims,[32] did not expressly subject such claims to the limitation period in RCW 19.86.120, these general policy goals are not probative of the legislature's specific intent concerning the applicability of RCW 19.86.120 to parens patriae claims.

The Petitioners next assert that "absurd results" and "discord within the CPA" would follow from treating an identical class of direct purchasers differently depending on whether suit was filed pursuant to RCW 19.86.080 or RCW 19.86.090. However, the Petitioners overlook the significance of the distinct relief available under RCW 19.86.080 and 19.86.090. A class action would seek injunctive relief and actual damages, whereas a suit brought by the Attorney General as parens patriae on behalf of the same class would seek injunctive relief and, at the discretion of the trial court, restitution.[33] In the context of the CPA, the differences between damages and restitution are significant.

At the outset, it is important to note that individuals desirous of restitution are subject to both the discretion of the Attorney General and the court. Indeed, under RCW 19.86.080, individuals must rely on the Attorney General to file suit on their behalf, and then must rely on the court to exercise its discretion and award restitution. In contrast, under RCW 19.86.090, individuals may bring suit if they wish and courts are not given discretion to refuse to award damages—if proved—for a successful claim. In view of the passive role for individuals, it is

---

[32] It is clear that, in amending RCW 19.86.080 in 2007, the legislature considered the CPA's structure. This is evidenced, in part, by its added directive that courts consider consolidation or coordination with other related actions to avoid duplicate recovery.

[33] "[Restitution] differs in its goal or principle from damages." 1 DAN B. DOBBS, DOBBS LAW OF REMEDIES § 4.1(1), at 555 (2d ed. 1993). Whereas "[r]estitution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain," damages "measures the remedy by the plaintiff's loss and seeks to provide compensation for that loss." 1 DOBBS, supra, § 4.1(1), at 555.

reasonable to conclude that the legislature's primary objective in creating RCW 19.86.080 was not to ensure that those individuals harmed by anticompetitive behavior were made whole. Instead, as our Supreme Court has recognized, claims brought pursuant to RCW 19.86.080 were intended to redound primarily to the benefit of the public.

"Suits for injunctive relief and restitution enforce the laws of the particular jurisdiction in the public interest by restoring the status quo." Ralph Williams', 82 Wn.2d at 277. Hence, our Supreme Court has "recognized that when the Attorney General brings an action under [the CPA], he acts for the benefit of the public." Lightfoot, 86 Wn.2d at 334. Even if, as a result of such an action by the Attorney General, "relief is provided for private individuals by way of restitution," our Supreme Court has characterized such relief as "*only incidental to and in aid of the relief asked on behalf of the public.*" Seaboard, 81 Wn.2d at 746 (emphasis added); cf. Ralph Williams', 82 Wn.2d at 277 ("Aid to individuals is not absolutely prohibited under our law but is only improper where public money is used solely for private purposes.").

Our Supreme Court has concluded that any private benefit conferred upon Washington residents through an award of restitution is subordinate to the benefit to the public. Although it is true that individuals who bring damages claims pursuant to RCW 19.86.090 may "act as private attorneys general" and "do not merely vindicate their own rights" but also "represent the public interest," Scott v. Cingular Wireless, 160 Wn.2d 843, 853, 161 P.3d 1000 (2007), there is no indication that the *primary* purpose of such claims is to benefit the public.

Rather, it is reasonable to conclude that any benefit to the public is incidental to a successful damages claim. In view of this, it is entirely conceivable that the legislature intended to exclude claims brought primarily for the benefit of the public from a statutory limitation period, while still imposing the limitation period on damages claims brought by individuals.

Nevertheless, the Petitioners assert that "an infinite limitations period" for RCW 19.86.080 claims "is inconsistent with [its] directive that courts reviewing such claims 'consider consolidation or coordination with other related actions, to the extent practicable, to avoid duplicate recovery.'" Petitioners' Opening Br. at 37 (quoting RCW 19.86.080(3)). It bears repeating that our only concern in resolving the first certified question is whether RCW 19.86.120 applies to parens patriae claims brought pursuant to RCW 19.86.080. To that end, we conclude that the directive identified by the Petitioners reveals only that the legislature envisioned the possibility that claims based on RCW 19.86.080 and 19.86.090 could be brought within the same time period. However, the phrasing does not, under any reasonable construction, suggest that the legislature understood or intended that all claims would necessarily be brought during the same four-year limitation period.

In sum, we hold that the legislature, as evidenced by the plain meaning of RCW 19.86.120, did not intend for its four-year limitation period to apply to parens patriae claims brought by the Attorney General on behalf of Washington residents pursuant to RCW 19.86.080.

III

With regard to the second question for which discretionary review was granted, the Petitioners contend that the trial court erred by holding that RCW 4.16.160 exempts the Attorney General's parens patriae claim from any otherwise applicable statute of limitation. This is so, they maintain, because—given that the enforcement of the CPA is not solely delegated to the Attorney General—the Attorney General's parens patriae action does not constitute an inherently sovereign duty and power. We disagree.

RCW 4.16.160 exempts certain claims "brought in the name or for the benefit of the state" from otherwise applicable statutory limitation periods.

> The limitations prescribed in this chapter shall apply to actions brought in the name or for the benefit of any county or other municipality or quasimunicipality of the state, in the same manner as to actions brought by private parties: *PROVIDED, That, except as provided in RCW 4.16.310, there shall be no limitation to actions brought in the name or for the benefit of the state, and no claim of right predicated upon the lapse of time shall ever be asserted against the state . . . .*

RCW 4.16.160 (emphasis added).[34] "This provision reflects a facet of sovereign immunity under the old English common law doctrine, '*nullum tempus occurrit regi*,' meaning 'no time runs against the king.'" Wash. State Major League

---

[34] Initially, the Petitioners argue that this exemption only applies to limitations prescribed within chapter 4.16 RCW. This is so, they assert, because the prefatory clause restricts application of the exemption to that of "limitations prescribed in this chapter." Petitioners' Opening Br. at 16. Thus, they argue, it has no application with regard to a cause of action subject to a statute of limitation set forth in a different chapter of the RCW. They are incorrect.

The prefatory clause applies the limitations on actions brought by private parties in chapter 4.16 RCW to actions brought in the name or for the benefit of certain political subdivisions of the State. The State itself, acting through the Attorney General does not, however, fall within the enumerated political subdivisions. Consistent with this observation, our Supreme Court has applied the exemption set forth in the proviso to a limitation period prescribed in a different chapter of the RCW in action brought by the State. See State v. Miller, 32 Wn.2d 149, 156, 201 P.2d 136 (1948) (applying the provision now codified at RCW 4.16.160 to exempt a certain cause of action from application of a statute of limitations located in a different code chapter).

Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co., 165 Wn.2d 679, 686, 202 P.3d 924 (2009) (hereinafter MLB) (quoting Sigmund D. Schutz, Time to Reconsider Nullum Tempus Occurrit Regi—The Applicability of Statutes of Limitations Against the State of Maine in Civil Actions, 55 ME. L. REV. 373, 374 (2003)). In construing this provision, our Supreme Court has "found an action to be 'for the benefit of the state' under RCW 4.16.160 where it involves a duty and power inherent in the notion of sovereignty or embodied in the state constitution." MLB, 165 Wn.2d at 689-90 (listing examples of sovereign action, including construction and maintenance of public parks, swimming pools, and merry-go-rounds, as well as the power of taxation and the design and construction of educational facilities). "The 'for the benefit of the state' language in RCW 4.16.160 is properly understood to refer to the *character or nature of*" the activity "rather than its effect." MLB, 165 Wn.2d at 686; accord Wash. Pub. Power Supply Sys. v. Gen Elec. Co., 113 Wn.2d 288, 293, 778 P.2d 1047 (1989) (hereinafter WPPSS) ("We have never sought to define 'benefit of the state' in terms of a beneficial effect."). "In determining whether an action is sovereign or proprietary, we may look to constitutional or statutory provisions indicating the sovereign nature of the power and may also consider traditional notions of powers that are inherent in the sovereign." MLB, 165 Wn.2d at 687. "Each case is determined in light of the particular facts involved." MLB, 165 Wn.2d at 687.

Parens patriae authority, which, like the exemption in RCW 4.16.160, was borrowed from English law, is itself a defining feature of sovereignty. As the

- 23 -

English constitutional system "developed from its feudal beginnings, the King retained certain duties and powers, which were referred to as the 'royal prerogative'" and which "were said to be exercised by the King in his capacity as 'father of the country.'" Hawaii v. Standard Oil Co. of Cal., 405 U.S. 251, 257, 92 S. Ct. 885, 31 L. Ed. 2d 184 (1972) (quoting Malina & Blechman, Parens Patriae Suits for Treble Damages Under the Antitrust Laws, 65 Nw. U. L. REV. 193, 197 (1970)). "The royal prerogative included the right or responsibility to take care of persons who 'are legally unable, on account of mental incapacity, whether it proceed from 1st. nonage: 2. idiocy: or 3. lunacy: to take proper care of themselves and their property." Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez, 458 U.S. 592, 600, 102 S. Ct. 3260, 73 L. Ed. 2d 995 (1982) (quoting J. CHITTY, PREROGATIVES OF THE CROWN 155 (1820)).

While the United States rejected England's King, it retained his paternal privilege, albeit in the form of a legislative prerogative inherent in the power of every state. Snapp, 458 U.S. at 600; Late Corp. of the Church of Jesus Christ of Latter-Day Saints v. United States, 136 U.S. 1, 57, 10 S. Ct. 792, 34 L. Ed. 478 (1890). Each state was permitted to exercise its parens patriae authority for, among other things, "'the prevention of injury to those who cannot protect themselves.'" Snapp, 458 U.S. at 600 (quoting Latter-Day Saints, 136 U.S. at 57). Washington has embraced the exercise of parens patriae authority, in certain scenarios, as both a power and duty of the State. See, e.g., In re Dep. of B.R., 157 Wn. App. 853, 864, 239 P.3d 1120 (2010) ("'[W]hen parental actions or decisions seriously conflict with the physical or mental health of the child, the

State has a parens patriae right and responsibility to intervene to protect the child.'" (alteration in original) (quoting In re Sumey, 94 Wn.2d 757, 762, 621 P.2d 108 (1980))).

In this matter, the Attorney General brought an action as parens patriae on behalf of Washington residents. Therefore, in determining the effect, if any, of RCW 4.16.160 upon the Attorney General's claim, we must consider whether the character or nature of the action is such that it involves a duty and power inherent in the notion of sovereignty. The authorities examined herein reveal that the exercise of parens patriae authority is itself a defining feature of state sovereignty, with roots that extend far back beyond not only the inception of statehood but also the formation of the Union. Consequently, we conclude that the Attorney General's parens patriae action is indeed sovereign in nature[35] and, hence, is brought for the benefit of the State.

The Petitioners disagree. They assert that, as a prerequisite to concluding that the parens patriae action is inherently sovereign, we must find that the enforcement of the CPA has been exclusively delegated to the Attorney General. In arguing that such a delegation has not occurred, the Petitioners contend that, because the legislature envisioned private plaintiffs acting "as private attorneys general," Scott, 160 Wn.2d at 853, it believed that private plaintiffs are "equally

---

[35] Conversely, it is our understanding that when the State seeks damages pursuant to RCW 19.86.090, it is acting not in a sovereign capacity but, rather, as a consumer. Counsel for the Attorney General, during oral argument, conceded that, when the State seeks to recover actual damages, it is not exercising a sovereign function. Counsel also conceded that the CPA does not authorize the State to act as parens patriae on behalf of itself.

capable"[36] of advancing the purposes of the CPA. Therefore, according to the Petitioners, it is clear that the enforcement of the CPA has not been exclusively delegated to the Attorney General.

The Petitioners misconstrue our Supreme Court's treatment of RCW 4.16.160. The Petitioners' primary contention, which is that the Attorney General's parens patriae action is not brought for the benefit of the State because the enforcement of the CPA has not been exclusively delegated to him, finds no support in the decisions of Washington appellate courts. While the decisions relied upon by the Petitioners have involved some examination of the nature of the underlying activity from which the cause of action arose, none have announced (or otherwise indicated) that an exclusive delegation of power is required in order for an action to be "brought for the benefit of the State."

In the decisions relied upon by the Petitioners, our Supreme Court was obliged to examine the nature of the underlying activity in order to determine whether the resulting actions—which were premised on the underlying activity but did not, ostensibly, exhibit the familiar trappings of sovereignty—were inherently sovereign for purposes of RCW 4.16.160. See MLB, 165 Wn.2d 679 (after concluding that the legislature delegated its sovereign function of providing for public recreation to a municipal corporation for the purpose of building a professional baseball stadium, the court held that a subsequent breach of contract action was brought for the benefit of the State), WPPSS, 113 Wn.2d 288 (after concluding that the legislature had not delegated sovereign authority to a

---

[36] Not only is it speculative to suggest that the legislature perceived private plaintiffs to be "equally capable" of furthering the purposes of the CPA, it is irrelevant to the resolution of this issue.

municipal corporation charged with delivering electricity within the State, the court held that a contract action brought by the corporation was not for the benefit of the State), and Bellevue Sch. Dist. No. 405 v. Brazier Constr. Co., 103 Wn.2d 111, 691 P.2d 178 (1984) (after concluding that the legislature delegated to a school district its sovereign function of providing for public education for the purpose of building and maintaining a school, the court held that a subsequent breach of contract action was brought for the benefit of the State), superseded by statute as recognized in Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kieweit Constr. Co., 176 Wn.2d 502, 513-14, 296 P.3d 821 (2013); cf. Herrmann v. Cissna, 82 Wn.2d 1, 507, P.2d 144 (1973) (after concluding that the insurance commissioner was an officer of the State, the court held that an action brought by the commissioner for breach of fiduciary duties against former officers and directors of a defunct insurer were brought for the benefit of the public).[37]

Considering the particular facts herein, there is no need to look beyond the face of the action itself to recognize its sovereign nature. Authority to bring a parens patriae action is rooted in the notion of state sovereignty, which is itself a byproduct of the royal prerogative held by England's King. As in England, where it was said, "no time runs against the king," it is apparent that in Washington—

---

[37] The Petitioners also cite to our decision in State v. Pacific Health Center, Inc., 135 Wn. App. 149, 157 n.7, 143 P.3d 618 (2006). They argue that a footnote contained in the procedural history demonstrates that a limitation period has previously been applied to a RCW 19.86.080 restitution claim. This footnote, which describes a trial court's ruling, states, "[t]he [trial] court found appellants had committed 9,426 separate violations within the statute of limitations' allowable period on the State's claim." Pac. Health, 135 Wn. App. at 157 n.7. Given that, at the time of our decision, the legislature had not yet expressly authorized parens patriae actions to be brought pursuant to RCW 19.86.080, this observation is not pertinent to the resolution of the issue presented herein.

given our legislature's adoption of a slightly modified version of "'nullum tempus occurrit regi'"—no time runs against the Attorney General when he brings an action as parens patriae pursuant to the CPA. In view of this, we conclude that the Attorney General's claim is brought for the benefit of the State and, thus, exempted from any otherwise applicable statute of limitation by RCW 4.16.160.

IV

The Petitioners seek consideration of issues for which discretionary review was not granted. They contend that because the Attorney General's claim for damages pursuant to RCW 19.86.090 is subject to the four-year statute of limitation within RCW 19.86.120, and because the Attorney General's claim for civil penalties pursuant to RCW 19.86.140 is not subject to the exemption contained in RCW 4.16.160, we must hold that both of these claims were untimely filed. However, because these issues are beyond the scope of the certified questions for which review was granted, we decline to reach them.

"This court determines the scope of discretionary review." Emily Lane Homeowners Ass'n v. Colonial Dev., LLC, 139 Wn. App. 315, 318, 160 P.3d 1073 (2007), aff'd in part, rev'd in part sub nom., Chadwick Farms Owners Ass'n v. FHC, LLC, 166 Wn.2d 178, 207 P.3d 1251 (2009); RAP 2.3(e). While RAP 2.3(e) vests discretion in appellate courts to delimit the scope of discretionary review, we have been indisposed to consider issues for which discretionary review was not granted. See Johnson, 159 Wn. App. at 959 n.7 ("Because discretionary review was not granted on this issue, we will not reach it."); see also City of Bothell v. Barnhart, 156 Wn. App. 531, 538 n.2, 234 P.3d 264 (2010)

("We granted review on a single, narrow issue. Accordingly, we decline to address other issues for which discretionary review was not granted."), aff'd, 172 Wn.2d 223, 257 P.3d 648 (2011); cf. Lunsford v. Saberhagen Holdings, Inc., 139 Wn. App. 334, 338, 160 P.3d 1089 (2007) ("[I]f an issue raised for the first time on appeal is 'arguably related' to issues raised in the trial court, a court may exercise its discretion to consider newly-articulated theories for the first time on appeal."), aff'd, 166 Wn.2d 264, 208 P.3d 1092 (2009).[38]

In Barnhart, we explained our reasons for demurring when urged to consider issues for which discretionary review was not granted.

> The city contends that we should affirm despite the commission of constitutional error because Barnhart failed to exercise peremptory challenges and failed to show anything other than harmless error. However, discretionary review of those issues was neither sought nor granted, and the city did not seek to modify the order granting discretionary review. In addition the city acknowledged at oral argument that it had not raised these contentions in the courts below.
>     . . . .
> Further, it would be imprudent for us to address those complex issues for the first time on discretionary review without the benefit of full development of the issues and complete briefing.

156 Wn. App. at 538 n.2.

In this case, as in Barnhart, discretionary review of the additional issues was neither sought nor granted, and the Petitioners did not seek to modify the order granting discretionary review. Moreover, while the Petitioners correctly note that their motion to dismiss targeted all of the Attorney General's claims, only the certified questions have been fully developed and completely briefed.

---

[38] Citing to Lunsford, the Petitioners argue that because the additional issues are arguably related to issues raised in the trial court, we should consider them for the first time "on appeal." Petitioners' Reply Br. at 25. To the contrary, this matter comes before us on discretionary review, not on appeal. Thus, Lunsford is inapposite.

Given the scant treatment of the additional issues, and in view of the Petitioners' failure to seek to modify the order granting discretionary review, we decline to consider these issues.[39] Because discretionary review was taken from an interlocutory order and because this matter has not been reduced to judgment, the Petitioners may, if they wish, litigate these issues more fully in the superior court.

Affirmed.

We concur:

_Dwyer, J._

_Spearman, C.J._                    _Cox, J._

---

[39] The Petitioners contend, without supporting citation, that because a commissioner of this court, "[d]uring the hearing on this motion, . . . discussed the applicability of" RCW 19.86.120 to claims brought pursuant to RCW 19.86.090, her subsequent grant of discretionary review, which "is simply silent on this issue," creates an "ambiguity in [her] order" that "renders Plaintiff's authorities inapposite." Petitioners' Reply Br. at 24. We are unpersuaded by this unsupported contention.